## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| WAYNE CARLISLE, et al. | : | CASE NO. 2:05-CV-059-DLB |
| | : | |
| Plaintiffs, | : | (Judge Bunning) |
| v. | : | |
| | : | **ELECTRONICALLY FILED** |
| CURTIS, MALLET-PREVOST, COLT & | : | |
| MOSLE, LLP, et al. | : | |
| | : | |
| Defendants. | : | |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANDREW BEER'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO VACATE THE DISMISSALS OF THE OTHER DEFENDANTS

REISENFELD & ASSOCIATES, LPA (by David C. Nalley)
3962 Red Bank Road
Cincinnati, Ohio 45227
Tel: 513-322-7000
Fax: 513-322-7099

-and-

David L. Katsky, Esq. (admitted *pro hac vice*)
Adrienne B. Koch, Esq. (admitted *pro hac vice*)
KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158
Tel.: (212) 953-6000
Fax.: (212) 953-6899

***Attorneys for Defendant Andrew D. Beer***

# TABLE OF POINTS AND AUTHORITIES

**Page**

PRELIMINARY STATEMENT _____ 1

*Frow v. De La Vega*, 82 U.S. 552 (1872) _____ 2, 3

*Ajami v. Saab*, No. 08-12088, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012) _____ 3

Fed. R. Civ. P. 19 _____ 3

KRS 454.210_____ 4

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011) _____ 4

Fed. R. Civ. P. 21 _____ 5

Fed. R. Civ. P. 41 _____ 5

THE COMPLAINT AND THE PROCEDURAL HISTORY _____ 6

*Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP*, 521 F.3d 597 (6th Cir. 2008) _____ 12

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) _____ 12

Fed. R. Civ. P. 41 _____ 12

Fed. R. Civ. P. 21 _____ 13

Fed. R. Civ. P. 12(b)(2) _____ 13

ARGUMENT _____ 13

   I. THE COURT SHOULD DISMISS THIS ACTION AS AGAINST BEER FOR LACK OF PERSONAL JURISDICTION BECAUSE THE WITH-PREJUDICE DISMISSAL OF THE SETTLING DEFENDANTS IS FATAL TO THE ONLY JURISDICTIONAL THEORY PLAINTIFFS ADVANCE_____ 13

   *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir. 1991)_____ 14

   *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp.2d 629 (E.D. Ky. 2012)_____ 14

   *Frow v. De La Vega*, 82 U.S. 552 (1872) _____ 14

   *Ajami v. Saab*, No. 08-12088, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012) _____ 14

**TABLE OF POINTS AND AUTHORITIES (cont'd)**

**Page**

Fed. R. Civ. P. 19 _____ 14

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981) _____ 14

A.  Under *Frow* and *Ajami*, Following The With-Prejudice Dismissal of Plaintiffs' Conspiracy Claim Against The Settling Defendants There Can Be No "Conspiracy Jurisdiction" _____ 15

    1.  Because The Dismissal Of Plaintiffs' Conspiracy Claim Against The Settling Defendants Is Fatal To Their Conspiracy Claim Against Beer, It Precludes Any Exercise Of "Conspiracy Jurisdiction"_____ 15

      *Warfield v. AlliedSignal TBS Holdings, Inc.,* 267 F.3d 538 (6th Cir. 2001) _____ 15

      *Espinal v. Wright,* No. 3:09-CV-986, 2012 WL 864783
        (W.D. Ky. Mar. 13, 2012) _____ 15

      *Harrison v. Edison Bros. Apparel Stores, Inc.,* 924 F.2d 530 (4th Cir. 1991) __ 15, 17

      *Frow v. De La Vega,* 82 U.S. 552 (1872) _____ 15, 16, 17

      *Ajami v. Saab, No. 08-12088*, 2012 WL 5906399
        (E.D. Mich. Nov. 26, 2012)_____ 15, 16, 17

      42 U.S.C. § 1983 _____ 16

    2.  At A Minimum, The With-Prejudice Dismissal Of The Conspiracy Claim Against Andersen Precludes The Exercise Of "Conspiracy Jurisdiction" Here _____ 18

      42 U.S.C. § 1983 _____ 18

      *Ajami v. Saab,* No. 08-12088, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012)  18, 19

      *Orellana v. CropLife Int'l,* 740 F. Supp.2d 33 (D.D.C. 2010) _____ 18

      *Orellana v. CropLife Int'l,* 711 F. Supp.2d 81 (D.D.C. 2010) _____ 19

      *Harrison v. Edison Bros. Apparel Stores, Inc.,* 924 F.2d 530 (4th Cir. 1991) _____ 19

B.  Plaintiffs' Stipulation To The With-Prejudice Dismissal Of Their Claims Against The Settling Defendants Is Separately Fatal To Their Conspiracy Claim (And Thus To Any "Conspiracy Jurisdiction") Because That Claim Cannot Proceed In The Absence Of Those Defendants _____ 19

    Fed. R. Civ. P. 19 _____ 20, 21, 22, 23, 24

## TABLE OF POINTS AND AUTHORITIES (cont'd)

**Page**

*Boles v. Greeneville Hous. Auth.*, 468 F.2d 476 (6th Cir. 1972) _____ 20, 21, 23

*Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008) _____ 20, 21, 23

*Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999) _____ 20

*Leonard J. Strandberg and Assocs. v. Misan Constr. Corp.*, No. 08 CV 2939 (SJF)
    (ETB), 2010 WL 1565485 (E.D.N.Y. Apr. 19, 2010) _____ 20

22 N.Y.C.R.R. § 1200.0, Rule 8.4(a) _____ 21

*Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999) _ 21, 22, 23

*McNeill v. The Travelers Ins. Co.*, No. 05-2727-STA, 2008 WL 5248518
    (W.D. Tenn. Dec. 16, 2008) _____ 22, 23

*In re Apple iPhone Antitrust Litig.*, 874 F. Supp.2d 889 (N.D. Ca. 2012) _____ 23

*Creative Trade Group, Inc. v. Internat'l Trade Alliance, Inc*., No. 08 C 2561,
    2010 WL 1541308 (N.D. Ill. Apr. 16, 2010) _____ 23

*CNH Capital Am., LLC v. Southeastern Aggregate, Inc.*, No. 608CV027, 2009 WL
    1759572 (S.D. Ga. June 18, 2009) _____ 23

*Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC*, 683 F.
    Supp.2d 102 (D. Mass. 2009) _____ 24

II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS AGAINST BEER IN ALL
    EVENTS BECAUSE "CONSPIRACY JURISDICTION" IS NOT A VALID BASIS
    FOR THE EXERCISE OF PERSONAL JURISDICTION HERE_____ 25

*Miller v. AXA Winterthur Ins. Co.,* 694 F.3d 675 (6th Cir. 2012) _____ 25

A.  The Kentucky Long-Arm Statute Does Not Authorize This Court's Exercise Of
    Personal Jurisdiction Over Beer _____ 25

KRS 454.210 _____ 25, 26, 27

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011) ___ 25, 26, 27

*Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12CV62-S,
    2012 WL 4023789 (W.D. Ky. Sept. 12, 2012)_____ 26, 27

B.  This Court Cannot Constitutionally Exercise Personal Jurisdiction Over Beer _____ 27

**<u>TABLE OF POINTS AND AUTHORITIES (cont'd)</u>**

<u>Page</u>

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675 (6th Cir. 2012) _____ 27

1. Plaintiffs' Theory Of "Conspiracy Jurisdiction" Should Be Rejected As
   Inconsistent With Due Process_____ 27

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)_____ 28

*Rush v. Savchuk*, 444 U.S. 320 (1980) _____ 28

*Yen v. Buchholz*, No. C-08-03535 RMW, 2010 WL 1758623
   (N.D. Cal. Apr. 30, 2010) _____ 28

*Calder v. Jones*, 465 U.S. 783 (1984) _____ 28

*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953) _____ 28, 29

15 U.S.C. § 15 _____ 28

*Kipperman v. McCone*, 422 F. Supp. 860 (N.D. Cal. 1976) _____ 29

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp.2d 145 (D.
   Me. 2004)_____ 29

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694
   (1982)_____ 29

*Chandler v. Barclays Bank PLC*, 898 F.2d 1148 (6th Cir. 1990) _____ 30

29 U.S.C. § 1132(e)(2) _____ 30

17 U.S.C. § 13a-1(e) _____ 30

15 U.S.C. § 22 _____ 30

15 U.S.C. § 78aa(a) _____ 30

18 U.S.C. § 1965 _____ 30

*Carvel v. Griffin*, No. 07-273-JJF, 2008 WL 4922432 (D. Del. Nov. 18, 2008) __ 30

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981)_____ 30

Fed. R. Civ. P. 12(b)(2) _____ 30

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)_____ 30, 31

iv

**TABLE OF POINTS AND AUTHORITIES (cont'd)**

**Page**

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) _____ 31

*Bird v. Parsons,* 289 F.3d 865 (6th Cir. 2002) _____ 31

   2. The Exercise Of "Conspiracy Jurisdiction" Here Is Not Reasonable _____ 31

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)_____ 32

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)_____ 32

III.  IF THE COURT DECLINES TO DISMISS THIS ACTION IN ITS ENTIRETY AS
AGAINST BEER, IT SHOULD VACATE THE ORDERS DISMISSING THE
SETTLING DEFENDANTS FROM THE ACTION _____ 33

Fed. R. Civ. P. 54(b) _____ 33

*Mallory v. Eyrich*, 922 F.2d 1273 (6th Cir. 1991) _____ 33

Fed. R. Civ. P. 41 _____ 34, 39

*NECA-IBEW Pension Fund v. Cox*, No. 1:11-cv-451, 2011 WL 6751459
(S.D. Ohio Dec. 22, 2011) _____ 34, 35

Fed. R. Civ. P. 21 _____ 35, 38. 39

*EQT Gathering, LLC v. A Tract of Property Situated in Knott Cnty., KY*, No. 12-58-ART,
2012 WL 3644968 (E.D. Ky. Aug. 24, 2012)_____ 35

*York v. Petzl Am., Inc.*, 353 S.W.3d 349 (Ky. Ct. App. 2010) _____ 36

*Cochran v. Folger*, No. 5:09-302-JMH, 2010 WL 2696634 (E.D. Ky. Jul. 6, 2010) ____ 36

Fed. R. Civ. P. 13(g) _____ 36

Fed. R. Civ. P. 14(a) _____ 36, 37

C. Wright, A. Miller, M. Kane & R. Marcus, *Federal Practice and Procedure 3d* § 1688
(2001 & Supp. 2012)_____ 38

CONCLUSION_____ 40

*Frow v. De La Vega*, 82 U.S. 552 (1872) _____ 40

*Ajami v. Saab*, No. 08-12088, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012) _____ 40

Fed. R. Civ. P. 19 _____ 40

Defendant Andrew D. Beer ("Beer") submits this memorandum of law in support of his motion for an order (a) dismissing this action as against him for lack of personal jurisdiction, on the ground that this Court's orders dismissing defendants Curtis, Mallet-Prevost, Colt & Mosle, LLP (the "Curtis Firm"), William L. Bricker ("Bricker"), Arthur Andersen LLP ("Andersen"), Integrated Capital Associates, Inc. ("ICA"), Intercontinental Pacific Group, Inc. ("IPG"), and Prism Connectivity Ventures, LLC ("Prism"; collectively, the "Settling Defendants") from this action with prejudice eliminated plaintiffs' only claimed basis for the exercise of personal jurisdiction over Beer; or (b) in the alternative, vacating those orders of dismissal – which were entered without affording Beer the opportunity to be heard that is mandated by Fed. R. Civ. P. 21 – and directing that plaintiffs and the Settling Defendants may re-apply for such dismissals under Rule 21 *only* on proper notice giving Beer an opportunity to be heard as to whether (and under what conditions) this action can continue in the absence of the Settling Defendants.[1]

## PRELIMINARY STATEMENT

Plaintiffs' complaint in this action focuses almost exclusively on their claim that all of the defendants conspired together to defraud them. What is more, their only argument that this Court can exercise personal jurisdiction over Beer – who undisputedly never personally dealt with plaintiffs and never transacted any business in Kentucky – is entirely dependent upon the existence of that conspiracy claim. Plaintiffs contend that because Beer allegedly participated in a conspiracy in connection with which Andersen (but not Beer) committed wrongful acts in Kentucky, this Court can exercise "conspiracy jurisdiction" over Beer: personal jurisdiction over him based on the alleged wrongful acts of Andersen as his purported co-conspirator.

---

[1] We emphasize that we do not contend that plaintiffs should be required to press their claims against the Settling Defendants and cannot settle with them and release their claims. Plaintiffs certainly can give such a release (and presumably did so). But for the reasons detailed below, that does *not* automatically mean that the Settling Defendants should be dropped from the case. Rather, that is for the Court to determine *after* Beer has had an opportunity to be heard. (*See infra*, Point III).

The critical and determinative fact on this motion is that plaintiffs have now stipulated to the *dismissal with prejudice* of all of their claims against Andersen and the other Settling Defendants, *including their conspiracy claim.*  But they still wish to use that claim (and, in particular, a contention that Andersen's alleged wrongful acts in Kentucky are attributable to Beer for jurisdictional purposes) as a basis for the exercise of personal jurisdiction over Beer.  As a matter of law, they cannot do so.

As a threshold matter, there can plainly be no "conspiracy jurisdiction" without a live underlying conspiracy claim.  The existence of such a claim is therefore crucial to the only basis for personal jurisdiction over Beer that plaintiffs assert.  If that claim fails, so too does their argument that this Court can exercise such jurisdiction.  As detailed below, plaintiffs' stipulation to the dismissal with prejudice of the conspiracy claim as against the Settling Defendants is fatal as a matter of law to their conspiracy claim against as Beer, and thus equally fatal to the claim of conspiracy jurisdiction.  For this fundamental reason, this entire action must be dismissed against Beer for lack of personal jurisdiction.

This is so because, under well-settled law, plaintiffs' stipulation to the with-prejudice dismissal of their conspiracy claim against the Settling Defendants operates as an adjudication in favor of the Settling Defendants *on the merits* of that claim.  (*See infra* at 15).  As a result, under *Frow v. De La Vega*, 82 U.S. 552 (1872), plaintiffs cannot prevail on that claim (and therefore cannot continue to assert it) against *anyone else*, including Beer.  As the Supreme Court held in *Frow*, to allow a conspiracy claim to stand against any co-conspirator once it has been adjudicated meritless as against the others would be "unseemly and absurd, as well as unauthorized by law."  (*See infra* at 15-16).  Applying this principle to facts strikingly parallel to this case, less than five months ago the court in *Ajami v. Saab*, No. 08-12088, 2012 WL 5906399

(E.D. Mich. Nov. 26, 2012), held that where the conduct of a particular alleged co-conspirator was essential to the conspiracy claim, the plaintiff's stipulation to a dismissal with prejudice as against that co-conspirator left the claim "devoid of merit [and] no longer open to discussion" (and therefore required its dismissal) even as against alleged co-conspirators who had defaulted. (*See infra* at 16-17).

As discussed below, the facts here require the same result as in *Frow* and *Ajami*: the with-prejudice dismissal of plaintiffs' conspiracy claim as against the Settling Defendants mandates its dismissal as against Beer. Because there can be no "conspiracy jurisdiction" without that claim, upon such a dismissal the Court should dismiss this action as against Beer in its entirety. (Point I.A.1). Moreover, regardless of whether any conspiracy claim could in theory survive, the with-prejudice dismissal of the conspiracy claim as against *Andersen* independently dictates the dismissal of this action in its entirety as against Beer because, with that dismissal, plaintiffs have lost their sole jurisdictional anchor: they can no longer claim a conspiracy in which Andersen committed wrongful acts in Kentucky. (Point I.A.2).

If the Court agrees, it need go no further. But should any doubt remain, the Court should find that the with-prejudice dismissal of plaintiffs' conspiracy claim as against the Settling Defendants requires the dismissal of that claim as against Beer for the further reason that, under Fed. R. Civ. P. 19, the Settling Defendants are "required" parties in whose absence that claim *cannot proceed*. Plaintiffs' own complaint reveals that the Settling Defendants are so central to any alleged conspiracy that plaintiffs cannot prevail on their conspiracy claim unless the Court finds that the Settling Defendants engaged in serious (and potentially criminal) wrongdoing. Such a finding would cause substantial prejudice to the Settling Defendants, some of whom are attorneys (the Curtis Firm and Bricker) and accountants (Andersen and its agents) who could be

subject to professional discipline or otherwise personally harmed as a result of any such finding. These circumstances make the Settling Defendants indispensible parties to the conspiracy claim. Plaintiffs' choice to dismiss those defendants from the case requires the dismissal of that claim (and correspondingly defeats their jurisdictional contention) for this reason as well.  (Point I.B).

The Court should dismiss this action as against Beer for any or all of the foregoing reasons.  If the Court disagrees, however, it should nevertheless conclude that it lacks personal jurisdiction over Beer because plaintiffs' conspiracy theory cannot withstand the two-step analysis that is applicable as a matter of law to all determinations of personal jurisdiction.  Under that analysis, this Court can exercise such jurisdiction *only* if (a) the Kentucky long-arm statute authorizes the exercise of such jurisdiction under the circumstances at issue here; *and* (b) the exercise of such jurisdiction under those circumstances is consistent with due process.  Plaintiffs' theory cannot satisfy either of those criteria.

With respect to the Kentucky long-arm statute (KRS 454.210), under the Kentucky Supreme Court's ruling in *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), it would not be enough (as plaintiffs have previously argued) if plaintiffs could demonstrate that their jurisdictional assertion is consistent with the requirements of due process.  Rather, before the due process analysis is even reached, plaintiffs would have to demonstrate that each of their claims falls into one of the nine categories enumerated in that statute.  But plaintiffs have already *conceded to the Court* in an earlier motion that their claims against Beer do *not* fall within any of those nine categories.  Under *Caesars*, that concession ends the jurisdictional inquiry and requires the dismissal of this action as against Beer.  (Point II.A).

Again, if the Court agrees it need go no further.  Nonetheless, if the Court proceeds to the second step of the jurisdictional analysis, it should conclude that plaintiffs' jurisdictional theory

fails there as well: the exercise of personal jurisdiction over Beer under the circumstances present here would not comport with the requirements of due process.  As plaintiffs themselves describe their jurisdictional theory: (a) it would allow Beer to be haled into this Court based on the alleged actions of parties *other* than himself; (b) it amounts to a judge-made doctrine that would authorize nationwide service of process for state-law conspiracy claims (something only Congress can authorize); and (c) it would allow this Court to exercise personal jurisdiction based solely on a finding that plaintiffs have adequately *alleged* (as distinct from having submitted evidence of) a conspiracy, thus depriving Beer of his due process right to test the jurisdiction of this Court *before* being required to litigate the merits of plaintiffs' claims here.  In all of these respects (and as further discussed below), that jurisdictional theory violates long-standing precedent of the United States Supreme Court.  (Point II.B.1)

Moreover, as plaintiffs now wish to proceed against only one defendant (Beer), they no longer "need" a forum in which all of the alleged co-conspirators can be sued together.  The exercise of "conspiracy jurisdiction" under these circumstances is doubly unwarranted, particularly in light of (a) the substantial burden on Beer of having to litigate in a distant forum in which he has never transacted any business; and (b) the minimal nature of any interest Kentucky may have in this dispute given that, of the eleven plaintiffs, only two are citizens of Kentucky (and the other nine are citizens of Ohio).  Plaintiffs' jurisdictional theory should be rejected for any or all of these reasons as well.  (Point II.B.2)

Finally, in the event that any aspect of this action is permitted to proceed against Beer, the Court should vacate the orders dismissing the action as to the Settling Defendants.  In violation of Rules 21 and 41 of the Federal Rules of Civil Procedure, plaintiffs and the Settling Defendants purported to obtain those dismissals *without* a motion – and thus *without* affording

Beer any opportunity to be heard as to (a) whether this action should continue in the absence of the Settling Defendants; and (b) if so, what conditions should be imposed on their dismissal. As a result, the Settling Defendants were dismissed from the case *before* Beer had any chance to assert crossclaims that (as discussed below at 35-37) he has against them for indemnification (which, under applicable Rules, can only be asserted in a pleading that has not yet come due). Because Beer was not heard in connection with those dismissals, this Court never considered whether they should have been deferred until after Beer had an opportunity to assert such crossclaims. Nor did it ever consider whether those dismissals should be conditioned upon an agreement by the Settling Defendants to submit to this Court's jurisdiction for discovery purposes and, most importantly, the provision of trial testimony. At a minimum, such conditions are essential given that the Settling Defendants are the parties whose alleged conduct was at the center of the conspiracy plaintiffs describe in their complaint (and, accordingly, possess by far the greatest amount of information needed to respond to and/or refute plaintiffs' claims).

The Court should reject this effort by plaintiffs and the Settling Defendants to sidestep Beer's rights and the governing Rules in this manner. Instead, if it does not dismiss this action in its entirety as against Beer, it should vacate the orders of dismissal as to the Settling Defendants and direct that plaintiffs and the Settling Defendants may re-apply for such dismissals only by motion, on proper notice to Beer, made *after* Beer's time to assert crossclaims has run. At that point, any such application can be considered in light of all of the relevant factors. (Point III).

## THE COMPLAINT AND THE PROCEDURAL HISTORY

For purposes of this motion, the facts that plaintiffs allege in their complaint must be viewed in conjunction with the procedural history of this case. As detailed below, the heart of the complaint is an alleged conspiracy in which Andersen, Bricker and the Curtis Firm played the central roles; the heart of their argument that this Court can exercise personal jurisdiction

over Beer is a contention that, as an alleged member of that conspiracy, he can be held accountable for wrongful acts that Andersen allegedly committed in Kentucky.  The procedural posture of this case is that by plaintiffs' choice – prior to any answer to their complaint – they dismissed their conspiracy claim with prejudice as against *all* of the central players in the alleged conspiracy.  We ask the Court to keep this procedural context firmly in mind throughout this discussion of the facts as plaintiffs have alleged them because, for the reasons summarized above and explained below, with that dismissal plaintiffs' sole asserted basis for this Court's exercise of personal jurisdiction over Beer ceased to exist.

Plaintiffs initially sued nine defendants in this action: Andersen, the Curtis Firm, Bricker, Bricolage Capital, LLC ("Bricolage"),[2] Beer (who was the president of Bricolage), Samyak C. Veera ("Veera," who was also an officer of Bricolage),[3] ICA, IPG, and Prism.  Their complaint alleges that (a) upon the recommendation of their long-time accountants at Andersen and in reliance on a tax opinion letter from the Curtis Firm, plaintiffs participated in a series of transactions in 1999 (the "Transactions") for the purpose of "generat[ing] tax losses to offset income from other transactions" (Complaint, Doc # 1 (hereinafter "Compl.") ¶¶ 27-31); and (b) in 2004 and 2005, they enrolled in an IRS Settlement Initiative pursuant to which they voluntarily relinquished the benefit of those tax losses and paid taxes, penalties and interest (*id.* ¶¶ 55-59).  Plaintiffs claim that the defendants conspired to defraud them into executing the Transactions without revealing that the Transactions were unlawful tax shelters.[4]

---

[2] Bricolage subsequently filed for bankruptcy, resulting in an automatic stay of these proceedings as against it.  (*See* Doc # 73 and 89).  In connection with that bankruptcy, plaintiffs settled their claims against Bricolage and received payments from the bankruptcy estate.

[3] Veera was apparently never served with the complaint, and has not participated in this litigation.

[4] The Complaint also asserts other claims against various combinations of the defendants.  Only two of these – claims for fraud and for breach of fiduciary duty – are asserted against Beer.  Neither of these other claims is asserted as a basis for personal jurisdiction over him.

In particular, plaintiffs allege that, following the sale of their business, they consulted with Andersen – who had been their "accountant, auditor and tax advisor for more than twenty years" – concerning "potential tax shelters, investment options and other matters."  (*Id*. ¶¶ 28-29).  According to plaintiffs, following that consultation Andersen "introduced" them to Bricolage and the Curtis Firm.  Thereafter, Andersen, Bricolage and the Curtis Firm "jointly recommended a tax shelter" called the "Leveraged Option Strategy" (*i.e.*, the Transactions), but advised them that as a condition to their participation in that tax shelter they would have to "invest in certain warrants to purchase stock of other small, high-tech companies."  (*Id*. ¶¶ 30-32).  Plaintiffs also admit, however, that "Andersen acted as middle man for virtually all of [their] communications with Bricolage (*e.g.,* handling discussions and transmitting documents)"; thus all or virtually all "recommendations" (and other information) that plaintiffs claim to have received from Bricolage were actually communicated to them *by Andersen*.  (*See* Declaration of Gary L. Strassel, Doc # 55 (hereinafter, "Strassel Decl."), ¶ 10).

In sharp contrast to the central roles played by Andersen, the Curtis Firm and Bricker, plaintiffs do not claim that they ever dealt with Beer (either in his individual capacity or as a representative of Bricolage).  Consistent with this fact, every document they have submitted that is signed on behalf of Bricolage is signed by someone other than Beer.  (*See, e.g.,* Strassel Decl. Exh. 6 (Doc # 55-8) at 7; Strassel Decl. ¶ 12 and Exh. 11 (Doc # 55-13)).[5]

The Complaint goes on to allege that Bricolage (through Andersen – *see* Strassel Decl.

---

[5] Although the Complaint contains 102 numbered paragraphs, only six of them (paragraphs 21, 47, and 92-95) mention Beer at all.  Of those six, one paragraph (paragraph 21) asserts only that he is a citizen of Connecticut and was a principal of Bricolage.  A second paragraph (paragraph 47) asserts only that Beer "and/or" the other named defendants "entered into an undisclosed promotion agreement whereby each would receive a portion" of certain amounts allegedly "paid by Plaintiffs to Andersen, Bricolage, the Curtis Firm, ICA, IPG and/or [Prism]" – that is, according to the Complaint Beer may or may not have been among those who received a portion of those amounts.  The other four paragraphs (paragraphs 92-95) relate only to plaintiffs' claim for breach of fiduciary duty, and mention Beer only as part of a list of defendants that plaintiffs claim owed them fiduciary duties that were somehow breached as a result of "acts and conduct" that the Complaint (incorrectly) assumes it has already recounted in previous paragraphs.  (*See* Compl. ¶¶ 91, 95).

¶ 10) represented to them that the Curtis Firm "could provide an independent, reliable legal opinion to substantiate the legality and validity" of the Transactions as a "tax shelter." (Compl. ¶ 33). Plaintiffs signed retainer agreements with the Curtis Firm, which (according to plaintiffs) "held itself out, in this matter, to be independent legal counsel that would provide [p]laintiffs . . . independent and reliable tax opinion letters . . . opining that the Leveraged Option Strategy was properly allowable for federal income tax purposes." (*Id.* ¶¶ 35, 37). Plaintiffs contend, however, that the Curtis Firm had an undisclosed relationship with ICA and IPG, pursuant to which "ICA was financing the Curtis Firm's tax shelter business in order to ensure access to, and a steady stream of income from, wealthy individuals who they engaged in Bricolage's Leveraged Option Strategy and purchased the required warrants that ICA owned." (*Id.* ¶¶ 38-39).

According to the Complaint, "[a]fter their Leveraged Option Strategy transactions were complete" Andersen gave plaintiffs "information pertaining to" certain warrants, which they then purchased from Prism. (*Id.* ¶¶ 41-45). Plaintiffs claim that, unbeknownst to them, these warrants had been owned by ICA one to two months before their purchase by plaintiffs. (*Id.* ¶¶ 43, 45). They further contend that "Andersen, Beer, Bricolage, Bricker, the Curtis Firm, ICA, IPG, Prism *and/or* Veera had entered into an undisclosed promotion agreement whereby each would receive a portion of the legal and other fees and costs associated with the Leveraged Option Strategy, as well as a portion of the purchase prices of the warrants, paid by [p]laintiffs to Andersen, Bricolage, the Curtis Firm, ICA, IPG and/or [Prism]." (*Id.* ¶ 47, emphasis added).

In addition to their discussions with Andersen about these warrants, plaintiffs claim to have had a number of conversations and other communications about them with ICA (through its representative, Eric Sullivan). (*See, e.g.,* Strassel Decl. ¶¶ 11-12; *id.* ¶ 21). They do not claim that they ever had any such conversations or communications with Beer or with Bricolage.

In or about June 2000 (after they had purchased the warrants), plaintiffs received opinion letters from the Curtis Firm in which, by plaintiffs' description, the Curtis Firm "advised" them "that their entire Leveraged Option Strategy transactions were properly allowable for federal income tax purposes." (Compl. ¶ 48). Bricker (a partner with the Curtis Firm) was the attorney primarily responsible for these opinion letters and for the firm's relationship and communications with plaintiffs. (*See, e.g.,* Strassel Decl. Exh. 5 (Doc # 55-7) at 5, 7).

Plaintiffs claim that these opinions "were canned, deceptive prefabricated forms." (Compl. ¶ 49). They also claim that, by December 1999, Andersen and the Curtis Firm "knew or should have known that the IRS would assert that the purported losses arising from the Leveraged Option Strategy were improper and not allowable for tax purposes," but that Andersen and the Curtis Firm (together with Bricolage, who allegedly communicated with plaintiffs through Andersen – *see* Strassel Decl. ¶ 10) failed to inform plaintiffs of this fact. (Compl. ¶ 51). Plaintiffs further claim that they paid for the opinion letters from the Curtis Firm through checks payable not to the Curtis Firm, but to IPG. (Strassel Decl. ¶ 13).

Plaintiffs next allege that in August 2000 the IRS published a notice that gave "the clear message . . . that the purported losses arising from the Leveraged Option Strategy [were] not properly allowable for federal income tax purposes." (Compl. ¶ 52). However, although they contend they made "specific inquiry" to Andersen and the Curtis Firm "regarding the potential consequences of" that notice, plaintiffs assert that "Andersen and the Curtis Firm . . . downplayed the notice to the detriment of [p]laintiffs." (*Id.*).

Thereafter, Andersen prepared plaintiffs' income tax returns for 1999. (*Id.* ¶ 54). Plaintiffs allege that, in the course of preparing those returns, Andersen again advised them "that they could properly claim capital and ordinary losses from the Leveraged Option Strategy

10

transactions." (*Id.*). They further allege that they relied on this advice and on the tax advice they received from the Curtis Firm in claiming those losses and signing those returns. (*Id.*).

Plaintiffs claim that, in or about March of 2002, the Curtis Firm advised them of a federal "Amnesty Program" for taxpayers who had engaged in certain transactions, including the Leveraged Option Strategy. (*Id.* ¶ 55). According to plaintiffs, the firm did not at that point "recommend" that they enroll in that program. (*Id.*). Later, in or about June of 2004 (in the course of their "ongoing relationship" with the Curtis Firm), plaintiffs asked the Curtis Firm to represent them in connection with their efforts to negotiate settlements with the IRS. (Strassel Decl. ¶ 23). The Curtis Firm declined to do so. (*Id.*). Plaintiffs thereafter entered into settlements with the IRS in October 2004 and March 2005. (Compl. ¶¶ 56-59).

Plaintiffs assert that they were misled concerning the nature of the Transactions and the validity of the tax deductions they claimed on the 1999 tax returns prepared by Andersen. They seek to recover damages that ostensibly include penalties they paid to taxing authorities, the price they paid for the warrants they purchased from Prism, fees paid to the Curtis Firm and to Bricolage, and various other expenses. (*See id.* ¶¶ 60-64). Beer is a defendant on only three of the Complaint's six counts – claims for fraud and conspiracy to defraud (which are asserted against all of the defendants) and a claim for breach of fiduciary duty (which is asserted against Beer, Andersen, Bricker, the Curtis Firm, Bricolage and Veera).

In pre-answer motion practice, the Settling Defendants and Bricolage moved to stay this action based on an arbitration clause in plaintiffs' investment agreements with Bricolage (the "Arbitration Clause"). While that motion was pending, Bricolage filed for bankruptcy; accordingly, the case was automatically stayed as to it. (*See supra*, n.2). Subsequently, this Court denied the motion as to the Settling Defendants. (Doc # 89).

11

Beer did not join in that motion.  Instead, he moved to dismiss the Complaint as against him for lack of personal jurisdiction and/or for failure to state a claim.  (*See* Doc # 29).  In response to that motion, this Court agreed with plaintiffs that its ability to exercise personal jurisdiction over Beer would depend upon whether or not plaintiffs could plead and prove that (a) he participated in a conspiracy to defraud them, and (b) Andersen, as a co-conspirator, committed one or more acts in furtherance of that conspiracy in Kentucky.  As a result, the Court directed plaintiffs to amend their Complaint following limited discovery concerning Beer's alleged role in such a conspiracy, with leave to Beer to move against any such amended Complaint.  (*See* Doc # 89 and transcript attached hereto as Exhibit A).

But prior to any such discovery, this Court issued a stay of all further proceedings (the "Stay," Doc # 106) – including all proceedings as to Beer – pending disposition of the Settling Defendants' appeal from the denial of their motion to stay the action based on the Arbitration Clause.  The Sixth Circuit dismissed the appeal (*Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP*, 521 F.3d 597 (6th Cir. 2008)); the Supreme Court reversed and remanded the case to the Sixth Circuit with directions that it rule on the merits (*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).  Plaintiffs then reached settlements with each of the Settling Defendants (whereupon the Sixth Circuit again dismissed the appeal).  (*See* Doc # 129).

Following remand to this Court, plaintiffs and the Settling Defendants filed two stipulations – signed only by counsel for plaintiffs and counsel for the Settling Defendants – purporting to dismiss the Complaint in its entirety, *with prejudice*, as against each of the Settling Defendants under Fed. R. Civ. P. 41.  (*See* Doc # 126 and 130).[6]  Although the Stay was still in place, and although Beer had neither signed those stipulations nor been heard with respect to

---

[6] One such stipulation was signed on behalf of plaintiffs and the Curtis Firm, Bricker and Andersen; the other was signed on behalf of plaintiffs and ICA, IPG and Prism.

them, the Court "So-Ordered" each of them on November 7, 2012.  (*See* Doc # 134 and 135).

After filing those stipulations, plaintiffs filed a motion asking this Court to schedule a conference to address both the lifting of the Stay and how the case should thereafter proceed against Beer alone.  (Doc # 132).  Beer filed a response in which he argued that (a) as Rule 41 does not permit a case to be discontinued by stipulation as to fewer than all parties, it was improper to drop the Settling Defendants as parties without following the procedure set forth in Fed. R. Civ. P. 21 – which required that Beer be given notice and an opportunity to be heard; and (b) the with-prejudice dismissal of the Settling Defendants requires the dismissal of this action as to him as well.  (*See* Doc # 138).  After lifting the Stay (*see* Doc # 140), this Court (a) set a briefing schedule for this motion by Beer; (b) directed that, in the event any aspect of the action survives Beer's motion, plaintiffs must file an amended complaint; and (c) set a briefing schedule for any motion by Beer to dismiss any such amended complaint.  (Doc # 154; *see* Doc # 153).  Beer timely makes this motion under the schedule set by the Court.[7]

## ARGUMENT

### I. THE COURT SHOULD DISMISS THIS ACTION AS AGAINST BEER FOR LACK OF PERSONAL JURISDICTION BECAUSE THE WITH-PREJUDICE DISMISSAL OF THE SETTLING DEFENDANTS IS FATAL TO THE ONLY JURISDICTIONAL THEORY PLAINTIFFS ADVANCE

Plaintiffs' contention that this Court has personal jurisdiction over Beer is based solely on their allegations that (a) Beer and Andersen (together with the other Settling Defendants) were members of a conspiracy; and (b) "the acts of Andersen . . . , performed in [Kentucky] in

---

[7] Pursuant to the Court's direction (*see* Doc # 147), this motion only addresses certain "preliminary issues" that arise as a result of the dismissals of the Settling Defendants and plaintiffs' attempt to proceed against Beer alone.  If the action is not dismissed as a result of this motion, Beer reserves the right to raise all applicable objections under Fed. R. Civ. P. 12(b) in response to plaintiffs' amended complaint.  In this regard, we note in particular that, inasmuch as this Court must have personal jurisdiction over Beer with respect to each individual claim that is asserted against him (*see infra* at 25-27 and 30 n.27), Beer reserves the right to (a) move under Fed. R. Civ. P. 12(b)(2) with respect to any claims asserted against him in any amended complaint, and (b) thereby require plaintiffs to make an evidentiary showing of personal jurisdiction with respect to each such claim.

furtherance of the conspiracy, constitute sufficient contacts to establish personal jurisdiction over [Beer]."  (Plaintiffs' Memorandum of Law in opposition to Beer's original motion to dismiss, Doc # 52 (hereinafter, "Pl. Jurisdictional Mem."), at 16-17).[8]  By its own terms, this so-called "conspiracy jurisdiction" requires that plaintiffs have a live conspiracy claim against Beer.  But in light of the dismissal of their conspiracy claim against the Settling Defendants, the continued assertion of that claim against Beer is barred (a) under the principles articulated in *Frow* and *Ajami, supra*; and/or (b) pursuant to Fed. R. Civ. P. 19, because the Settling Defendants are indispensible to that claim.  That dismissal therefore defeats any claim of "conspiracy jurisdiction," and correspondingly requires the dismissal of this action as against Beer.

Although we also submit that "conspiracy jurisdiction" is not authorized either under Kentucky law or under the due process clause of the U.S. Constitution and therefore cannot be used as a basis for the exercise of personal jurisdiction over Beer in any event, the Court need not reach that broader question here because a determination that the dismissal of the Settling Defendants makes "conspiracy jurisdiction" unavailable would end the case.  We therefore address that narrower question first.  *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) (because on the facts before the Sixth Circuit the plaintiff could not make the showing that would be necessary to support "conspiracy jurisdiction" even if it were a valid jurisdictional theory, the Circuit Court ruled that it "need neither adopt nor reject the 'conspiracy theory' of in personam jurisdiction as a general principle of law in this circuit").

---

[8] Although plaintiffs also claimed that the alleged acts of Bricolage could give rise to personal jurisdiction over any co-conspirator with Bricolage (*see id.*), we do not understand plaintiffs to be advancing this argument with respect to Beer because, inasmuch as Beer was at all relevant times an officer of Bricolage (*see* Declaration of Andrew D. Beer dated June 30, 2005, Doc # 50-2 (hereinafter, "Beer Decl."), ¶ 2), as a matter of law he could not have been a co-conspirator with that entity.  *See, e.g., Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991) (where "the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy"; conspiracy claim therefore properly dismissed); *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp.2d 629, 641 (E.D. Ky. 2012) (dismissing claim alleging that LLC and its employee conspired together, because it was clear from the complaint that LLC and employee "were acting with unity of interest"; as a matter of  law, in light of this fact they could not conspire together).

14

A. **Under *Frow* and *Ajami*, Following The With-Prejudice Dismissal of Plaintiffs' Conspiracy Claim Against The Settling Defendants There Can Be No "Conspiracy Jurisdiction"**

1. **Because The Dismissal Of Plaintiffs' Conspiracy Claim Against The Settling Defendants Is Fatal To Their Conspiracy Claim Against Beer, It Precludes Any Exercise Of "Conspiracy Jurisdiction"**

As a matter of basic principle, plaintiffs' stipulation to the with-prejudice dismissal of their conspiracy claim against the Settling Defendants operates as an adjudication in favor of those defendants on the merits of that claim. *See, e.g., Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect."); *Espinal v. Wright*, No. 3:09-CV-986, 2012 WL 864783, *6 (W.D. Ky. Mar. 13, 2012) (same); *accord Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir. 1991) (voluntary dismissal with prejudice "is a complete adjudication on the merits of the dismissed claim," and "[a]n adjudication in favor of the defendants, by a court or jury, can rise no higher than this") (citation and internal quotations omitted); *see also Warfield*, 267 F.3d at 542 (citing *Harrison* with approval for this proposition). Here, the Settling Defendants are central to the conspiracy plaintiffs allege; without them, there cannot have been any conspiracy. (*See supra* at 6-11). As a result, under *Frow* and *Ajami*, the dismissal of plaintiffs' conspiracy claim against those defendants precludes plaintiffs' continued assertion of that claim against Beer.

In *Frow*, the Supreme Court held that where a suit charges multiple defendants with conspiracy and one or more defendants default, no judgment can be entered against the defaulting defendants unless and until the plaintiff prevails at trial against the others. Correspondingly, if the other defendants obtain an adjudication in their favor, "the bill will be dismissed as to all of the defendants alike – the defaulter as well as the others." 82 U.S. at 554. Any other approach, the Court reasoned, could result in inconsistent adjudications in which a

plaintiff is awarded relief against one or more defendants based on a claim of conspiracy that has actually been adjudicated meritless – a result the Court deemed "unseemly and absurd, as well as unauthorized by law." *Id.* Under *Frow*, a plaintiff cannot proceed against any alleged co-conspirator where (as here) the conspiracy claim has been adjudicated against the plaintiff with respect to the other co-conspirators.

Relying on *Frow*, the court in *Ajami* made clear on facts essentially paralleling those at issue here that this reasoning applies with equal force to an adjudication in the form of a stipulation of dismissal with prejudice. There, the plaintiff asserted a claim under 42 U.S.C. § 1983 against a police officer (Saab) and two private individuals (Harajli and Baydoun) for conspiring to deprive the plaintiff of his constitutionally protected rights.[9] The two private individuals defaulted; thereafter, the plaintiff settled with the police officer and filed a stipulation dismissing his claims against that defendant with prejudice. Following that dismissal, the plaintiff asked the court to enter a default judgment against the other two defendants. The court refused to do so, reasoning:

> Because in Plaintiff's 42 U.S.C. § 1983 claim, Harajli and Baydoun are alleged to have acted pursuant to a plan with Saab to falsely accuse Plaintiff and bring about his arrest and prosecution, and because Saab has obtained an adjudication in his favor on the merits of the claims against him by virtue of his dismissal with prejudice, the Court declines to enter a default judgment against Saab's alleged co-conspirators on Plaintiffs' § 1983 claim (Count I). . . .  The Court's conclusion is compelled by Plaintiff's decision to file with the Court a formal dismissal of Defendant Saab *with* prejudice, which operates as an adjudication on the merits in Saab's favor and precludes Plaintiff from pursuing his § 1983 claim against Harajli and Baydoun.

2012 WL 5906399 at *6 (emphasis in original).

---

[9] 42 U.S.C. § 1983 creates a private cause of action in favor of an individual who is deprived of constitutional rights by a defendant acting under color of state law. Under that statute, "[p]rivate persons, jointly engaged with state officials in [a] prohibited action, are acting under color of law" if they are "willful participant[s] in joint activity with the State or its agents." *Ajami*, 2012 WL 5906399 at *6 (citation and internal quotations omitted; first two alterations in *Ajami*).

16

In other words, since a stipulation of dismissal with prejudice is, as a matter of law, equivalent to an adjudication against the plaintiff on the merits, under *Frow* the *Ajami* plaintiff's stipulation to the dismissal with prejudice of his conspiracy claim against the non-defaulting defendant had the same effect as a rejection of that claim at trial: it required the dismissal of his conspiracy claim against the defaulting defendants. *Id.* at *7 ("[p]laintiff has no § 1983 [conspiracy] claim against Harajli and Baydoun where Saab, the only state actor, has been exonerated of wrongdoing through Plaintiff's dismissal with prejudice"). The court therefore dismissed that claim with prejudice as "devoid of merit [and] no longer open to discussion." *Id.* (citation and internal quotations omitted; alteration in *Ajami*).

These principles apply with equal force here, and require the same result. Plaintiffs' conspiracy claim against Beer (who, unlike the defendants in *Frow* and *Ajami*, has never defaulted) depends on allegations that each of the Settling Defendants engaged in wrongdoing in furtherance of the conspiracy. Plaintiffs' conspiracy claim against those defendants, however, has now been adjudicated meritless by virtue of plaintiffs' stipulation to its dismissal with prejudice as to them. Consequently, a key element of plaintiffs' conspiracy claim against Beer – namely, participation in joint activity with the Settling Defendants for a common wrongful purpose – is absent. Because that claim cannot proceed without this element, it should be dismissed with prejudice.[10]

Without a live conspiracy claim, this Court plainly cannot exercise "conspiracy jurisdiction" over Beer. This action should be dismissed in its entirety as to him on this basis

---

[10] *Accord Harrison, supra*, 924 F.2d at 534 (plaintiff's stipulation to the with-prejudice dismissal of her claims against corporation's employee required the dismissal of claims against the corporation that were based on allegations that the corporation authorized or ratified tortious acts committed by employee; "[l]anguage in the stipulation of dismissal [that] purported to preserve [the plaintiff's] claims against [the corporation]" did not alter this result, because the employee's liability was essential to the claim against the employer and the stipulation operated as an "exoneration" of the employee).

alone.

2. **At A Minimum, The With-Prejudice Dismissal Of The Conspiracy Claim Against Andersen Precludes The Exercise Of "Conspiracy Jurisdiction" Here**

Even if the dismissal with prejudice of plaintiffs' conspiracy claim as against the Settling Defendants did not as a matter of law end their ability to pursue that claim as against Beer, it would in all events dispose of their claim of "conspiracy jurisdiction" because it would preclude plaintiffs from claiming that *Andersen* committed acts in furtherance of any conspiracy in Kentucky.  As plaintiffs concede, their jurisdictional theory requires not only a conspiracy; it also requires that one of the alleged co-conspirators performed acts "in the forum state in furtherance of the conspiracy."  (Pl. Jurisdictional Mem. at 17).  The only person or entity that is both claimed to have been a co-conspirator with Beer and alleged to have performed acts in Kentucky in furtherance of a conspiracy is Andersen.  (*See supra* at 13-14 and n.8).  Therefore, unless plaintiffs can prove that Beer participated in a conspiracy *with Andersen*, they cannot satisfy the jurisdictional test that they themselves have articulated.

In this way, Andersen occupies a position with respect to plaintiffs' alleged conspiracy that is identical to that of the state actor in the § 1983 claim that was at issue in *Ajami*.  Without that state actor, the plaintiff in *Ajami* may have been able to claim that the other defendants engaged in a conspiracy.  He could not, however, maintain a conspiracy claim under *§ 1983* – which was the only kind of conspiracy claim that would give the federal court subject matter jurisdiction – because he had dismissed with prejudice his claims against the state actor who was essential to such a claim.  As a result, his claim had to be dismissed.

*Orellana v. CropLife Int'l*, 740 F. Supp.2d 33, 39-40 (D.D.C. 2010), also presents facts parallel to those here, and equally mandates dismissal of this case.  There, as here, the plaintiffs asserted "conspiracy jurisdiction" as the basis for the exercise of personal jurisdiction over an

out-of-state defendant.  There, as here, the plaintiffs' conspiracy claim was dismissed as against the alleged co-conspirators who had purportedly committed wrongful acts within the jurisdiction.[11]   As a result, the court concluded that there could be no "conspiracy jurisdiction" over the remaining alleged co-conspirator.

The same result should follow here as in *Ajami* and *Orellana*.  The only kind of conspiracy claim that could support the exercise of "conspiracy jurisdiction" in this Court is one in which a co-conspirator committed wrongful acts in Kentucky.  Accordingly, even if plaintiffs could claim that Beer engaged in a conspiracy with someone *other* than Andersen, the dismissal with prejudice of their conspiracy claim against those parties disposes of their contention that any such conspiracy could give rise to personal jurisdiction over Beer in this Court.  That dismissal therefore requires the dismissal of this action in its entirety as to Beer for want of personal jurisdiction, *regardless* of whether any aspect of plaintiffs' conspiracy claim could otherwise survive.

B.  **Plaintiffs' Stipulation To The With-Prejudice Dismissal Of Their Claims Against The Settling Defendants Is Separately Fatal To Their Conspiracy Claim (And Thus To Any "Conspiracy Jurisdiction") Because That Claim Cannot Proceed In The Absence Of Those Defendants**

Even if plaintiffs' conspiracy claim against Beer were not precluded by the with-prejudice dismissal of that claim as against the Settling Defendants, it would have to be dismissed – depriving plaintiffs of their sole argument for the exercise of personal jurisdiction – for a separate reason: at least three of those defendants (Andersen, the Curtis Firm and Bricker)

---

[11] In *Orellana*, the plaintiffs' claims against the other alleged co-conspirators were dismissed *without prejudice* for failure to adequately plead a legally cognizable claim.  *See Orellana v. CropLife Int'l*, 711 F. Supp.2d 81, 114-115 (D.D.C. 2010).  Here, plaintiffs' conspiracy claim has been dismissed *with prejudice* as against the Settling Defendants through a stipulation that, as noted above (at 15), "is a complete adjudication on the merits of the dismissed claim" and has the same force and effect as a dismissal *with prejudice* by the Court.  *See Harrison*, 924 F.2d at 534.  That dismissal can plainly have no less impact than the without-prejudice dismissal at issue in *Orellana*.

are "required parties" to that claim within the meaning of Fed. R. Civ. P. 19(a), and under Fed. R. Civ. P. 19(b) the Court cannot resolve that claim without them.[12]  It is *plaintiffs'* burden to demonstrate that their claims should proceed in the absence of the Settling Defendants. [13] Plaintiffs here do not carry this burden.[14]

Even a cursory review of the Complaint reveals that the conduct of Andersen and of the Curtis Firm (undertaken, according to plaintiffs, through the person of Bricker) is *central* to the conspiracy plaintiffs allege.  (*See supra* at 6-11).  The Court thus cannot rule in favor of plaintiffs on the conspiracy claim against Beer (and, correspondingly, cannot find that it has personal jurisdiction over him) without also finding that the Curtis Firm, Andersen and Bricker committed acts in furtherance of a conspiracy whose goal was to defraud plaintiffs and/or to violate the tax laws.  (*See, e.g.,* Compl. ¶¶ 73-76).

The Court clearly should not make such a finding in the absence of those parties.  Among other things, such a finding would have significant professional and other repercussions for them

_____

[12] Rule 19 requires this Court to undertake a two-step analysis: first, it must determine whether any of the Settling Defendants is a "required party" within the meaning of Rule 19(a); second, if any one of them is a "required party" the Court must (under Rule 19(b)) "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

[13] *See, e.g., Boles v. Greeneville Hous. Auth.,* 468 F.2d 476, 478 (6th Cir. 1972) (if "an initial appraisal of the facts reveals the *possibility* that an unjoined party is arguably indispensable, the burden devolves upon the party whose interests are adverse to the unjoined party [*i.e.*, plaintiffs] to negate the unjoined party's indispensability to the satisfaction of the court") (emphasis added).  Prior to certain stylistic amendments in 2007, Rule 19(b) classified as "indispensible" any party whose nonjoinder would have to result in dismissal.  Those amendments removed the word "indispensible" but did not change the meaning of the Rule.  *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008).

[14] The fact that the Settling Defendants were initially named in this action (and thus temporarily "joined") does not change this analysis.  A case cannot proceed without an indispensable party *regardless* of when that party's absence begins.  *See, e.g., Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 761-65 (6th Cir. 1999) (where plaintiff amended complaint to drop defendant that was indispensable within the meaning of Rule 19, lower court erred in denying motion to dismiss amended complaint).  Moreover, the Settling Defendants' status as indispensable parties should have been considered in determining whether plaintiffs' claims against them could be discontinued without dismissing the entire action.  *See, e.g., Leonard J. Strandberg and Assocs. v. Misan Constr. Corp.*, No. 08 CV 2939 (SJF) (ETB), 2010 WL 1565485, *6 (E.D.N.Y. Apr. 19, 2010) (the Rules "clearly do[] not permit the removal of parties deemed indispensible pursuant to Rule 19(b)").  The only reason why this question was not considered at that juncture is because plaintiffs and the Settling Defendants proceeded (improperly) without providing Beer the notice and opportunity to be heard that the applicable Rules require.  (*See infra*, Point III).

as lawyers (the Curtis Firm and Bricker) and accountants (Andersen and its agents) who are subject to rules of professional conduct.[15]  This case thus falls under a well-established exception to the rule that otherwise permits a plaintiff to proceed against fewer than all joint tortfeasors: plaintiffs' conspiracy claim cannot proceed without Andersen, Bricker and the Curtis Firm.

*Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999), the leading case on the question of when an alleged co-conspirator is an indispensible party under Rule 19, is directly on point.  There, Laker Airways alleged that British Airways conspired with an English corporation called Airport Coordination Ltd. ("ACL") to restrain and monopolize passenger air service between Miami and London by manipulating the process for allocating take-off and landing times (called "slots").  Although ACL was the entity in charge of coordinating requests for slots at British airports, Laker did not name ACL as a defendant or seek any relief against ACL; in fact, by the time the case reached the Eleventh Circuit, Laker was seeking only money damages from British Airways.  *Id.* at 849.  But its complaint made clear that ACL was "an active participant in the allegations," and the court noted that "[w]ithout ACL, [British Airways] would not be able to manipulate, as Laker suggests, the slot allocation process."  *Id.* at 848.  The court therefore concluded that an adjudication of Laker's claim would "necessarily require that a court evaluate ACL's conduct in relation to Laker, thereby substantially implicating ACL's interests."  *Id.*  This, the court held, made ACL a necessary party within the meaning of Rule 19(a).  *Id.* (citing the Sixth Circuit's decision in *Boles, supra*).[16]

---

[15] *See* New York Rules of Professional Conduct, 22 N.Y.C.R.R. § 1200.0, Rule 8.4(a) ("Misconduct" – including but not limited to "conduct involving dishonesty, fraud, deceit or misrepresentation" – may subject a New York lawyer such as Bricker, or a New York law firm such as the Curtis Firm, to professional discipline).  Although Andersen itself "lost its auditing license" in 2002 and is no longer in business (*see* Compl. ¶ 27), there is no reason to believe that the individual representatives of Andersen with whom plaintiffs dealt are not still licensed accountants who would be substantially impacted by a finding that Andersen – acting through them – participated in a scheme such as the one plaintiffs allege in the Complaint.  Only Andersen (or these individuals themselves, whom plaintiffs have not identified) could adequately represent their interests here.

[16] The 2007 amendments (*see supra*, n.13) also changed the phrasing in Rule 19(a) from "necessary party" to

Turning to the question of whether, under Rule 19(b), the case could proceed in ACL's absence, the court held that it could not.  The "primary factor" supporting this conclusion was that a finding in Laker's favor would necessarily involve, "at the very least, comment upon ACL's allocation of slots" in a manner that could result in prejudice to ACL.  183 F.3d at 849.

*McNeill v. The Travelers Ins. Co.*, No. 05-2727-STA, 2008 WL 5248518 (W.D. Tenn. Dec. 16, 2008), is similarly on point.  In that case, the plaintiff claimed that the defendant ("Travelers") had conspired – together with two other companies ("Rose" and "Boyle") and with the attorneys for those companies – to deprive her of certain rights and to perpetrate a fraud. Boyle and the attorneys were not named as defendants in the complaint.  Travelers moved to dismiss on the ground that (a) Boyle and the attorneys were necessary parties within the meaning of Rule 19(a); (b) they could not be joined because, inasmuch as they were non-diverse, their joinder would deprive the court of subject matter jurisdiction; and (c) under Rule 19(b), the case could not proceed in their absence because a judgment in favor of the plaintiff would prejudice them.  The court agreed, holding:

> Plaintiff has alleged that Boyle and the attorneys engaged in an ongoing civil conspiracy . . . .  In furtherance of this conspiracy, Plaintiff contends that Boyle and the attorneys acting in concert with others perpetrated a fraud on the Circuit Court of Tennessee for the Thirteenth Judicial District at Memphis.  *Due to the serious nature of these allegations, Boyle and the attorneys have an interest in the claims before this Court.  Their absence would obviously impair those interests. Therefore, Boyle and the attorneys are indispensible parties to the case at bar.*

2008 WL 5248518 at *5 (emphasis added).

Just as in *Laker* and *McNeill*, a finding in plaintiffs' favor on their conspiracy claim would necessarily involve a determination that Andersen, Bricker and the Curtis Firm acted in a highly improper way.  According to plaintiffs, the co-conspirators induced or otherwise tricked

---

"required party."  This change was "stylistic only" and did not alter the meaning of the Rule.  *See Republic of the Philippines*, 553 U.S. at 855-56.

them into violating the tax laws – and, in the mix, most likely violated those laws themselves. (*See, e.g.,* Compl. ¶¶ 66-69, 72-76).  Andersen, Bricker and the Curtis Firm spearheaded this alleged scheme: as set forth in the Complaint, (a) Andersen recommended the Transactions to plaintiffs, introduced them to all of the other defendants, and failed to advise plaintiffs of the true nature of the Transactions; (b) the Curtis Firm, through Bricker, issued "deceptive" opinion letters to plaintiffs; and (c) Andersen, Bricker and the Curtis Firm thereafter engaged in an ongoing concealment that induced plaintiffs to claim losses from the Transactions in tax returns prepared by Andersen and to decline to participate in an amnesty program in 2002.  (*See supra* at 6-11).  At the same time, plaintiffs concede that they did not deal with Beer (or even with Bricolage) directly, but rather dealt almost exclusively with Andersen as "middle man."  (*See supra* at 8).  Plaintiffs thus cannot prevail on their conspiracy claim without a finding that each of those Settling Defendants committed serious wrongs (which, as plaintiffs characterize them, may even have been criminal – *see, e.g.,* Compl. ¶¶ 75-76).  As in *Laker* and *McNeill*, that such a finding would significantly impair the interests of those Settling Defendants.[17]

The Court must therefore determine whether plaintiffs have met their burden of showing that "in equity and good conscience" this case can proceed in the absence of those Settling Defendants.  Fed. R. Civ. P. 19(b); *see Boles*, 468 F.2d at 478 (making clear that plaintiffs bear this burden).  *None* of the factors listed in Rule 19(b)[18] supports such a result:

---

[17] *Accord, e.g., In re Apple iPhone Antitrust Litig.*, 874 F. Supp.2d 889, 899-900 (N.D. Ca. 2012) ("[I]n order to evaluate Plaintiffs' antitrust claims in regard to the alleged conspiracy . . . the Court will be required to evaluate ATTM's conduct . . . . Such an evaluation of ATTM's conduct would necessarily implicate the interests of ATTM, which means that ATTM is a necessary party pursuant to Rule 19(a)."); *Creative Trade Group, Inc. v. Internat'l Trade Alliance, Inc.*, No. 08 C 2561, 2010 WL 1541308, *4-5 (N.D. Ill. Apr. 16, 2010) (absent party that, like Andersen here, was "responsible for all pertinent communications and representations to [the plaintiff]" was "a party whose joinder is required by Rule 19"); *CNH Capital Am., LLC v. Southeastern Aggregate, Inc.*, No. 608CV027, 2009 WL 1759572, *5 (S.D. Ga. June 18, 2009) (where a "conspiracy claim necessarily requires that the [c]ourt evaluate [an absent party's] conduct," the absent party is "necessary to the litigation" of the conspiracy claim within the meaning of Rule 19).

[18] Rule 19(b) lists four non-exclusive factors for the Court's consideration in this regard: the extent to which a

23

- A finding in plaintiffs' favor on their conspiracy claim would have injurious legal and professional ramifications for those Settling Defendants that more than qualify for the kind of prejudice contemplated under Rule 19(b)(1).

- There is no way to lessen or avoid these injuries through the kinds of measures suggested in Rule 19(b)(2), for the simple reason that absent a finding of wrongful conduct by those Settling Defendants, plaintiffs *cannot* prevail on their claim.

- In light of these facts, a judgment in the absence of these parties would not be "adequate" within the meaning of Rule 19(b)(3) because it would be contrary to the "social interest in the efficient administration of justice and the avoidance of multiple litigation." *See Republic of the Philippines*, 553 U.S. at 870 (noting that in this context adequacy refers to that interest rather than to the ability of a judgment to resolve the plaintiff's claims).

- As to whether plaintiffs have an "adequate remedy" within the meaning of Rule 19(b)(4), although a finding that they cannot proceed on their conspiracy claim without one or more of the Settling Defendants will presumably mean that they cannot proceed on that claim at all, this situation is of plaintiffs' own choosing. It is *plaintiffs* who, by agreeing to dismiss that claim as against those defendants with prejudice, made it impossible for them to be joined again as co-defendants on that claim. In exchange for their agreement to such dismissals, plaintiffs apparently received settlement payments from each of the Settling Defendants. Those payments, whatever they were, must be deemed adequate to cover all of the consequences of the dismissals plaintiffs gave in exchange for them, *including* the fact that – either for the reasons set forth herein or for those detailed above in Point I.A – those dismissals ended plaintiffs' conspiracy claim against Beer. In short, plaintiffs chose their remedy and must now bear the consequences of that choice.

In light of the foregoing factors, the Court cannot in equity and good conscience adjudicate

the conspiracy claim without the Settling Defendants. That claim should therefore be

dismissed.[19] In the absence of a conspiracy claim, there can be no "conspiracy jurisdiction."

Consequently, upon the dismissal of that claim under Rule 19, the Court should dismiss the

entire action as against Beer for want of personal jurisdiction.

---

judgment rendered in the person's absence might prejudice the person or the existing parties (Rule 19(b)(1)); the extent to which any such prejudice could be avoided by measures such as protective provisions in the judgment (Rule 19(b)(2)); whether a judgment rendered in the person's absence would be "adequate" (Rule 19(b)(3)); and whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder (Rule 19(b)(4)). The Supreme Court, however, has cautioned that the weight and relevance of these factors – and the extent to which other factors may bear on the analysis – will depend upon the individual circumstances of each case. *Republic of the Philippines*, 553 U.S. at 862-63.

[19] *Accord Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC*, 683 F. Supp.2d 102, 116-17 (D. Mass. 2009) (where absent party was a key participant in alleged conspiracy but could not be joined without destroying diversity, plaintiff "must either drop its conspiracy claim, or the action will be dismissed").

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS AGAINST BEER IN ALL EVENTS BECAUSE "CONSPIRACY JURISDICTION" IS NOT A VALID BASIS FOR THE EXERCISE OF PERSONAL JURISDICTION HERE

Even if plaintiffs' conspiracy claim could survive the with-prejudice dismissal of their claims against the Settling Defendants, this action would have to be dismissed as against Beer for the separate reason that the applicable two-step analysis for determining whether this Court has personal jurisdiction simply does not leave room for the conspiracy theory that plaintiffs advocate – *particularly* in light of that dismissal. That analysis requires that this Court (a) first determine whether Kentucky's long-arm statute authorizes the exercise of jurisdiction over Beer; and (b) second (and *only* if it concludes that the requirements of the Kentucky long-arm statute are met) determine whether the exercise of such jurisdiction comports with the constitutional requirements of due process.[20] Plaintiffs' theory fails *both* steps of that jurisdictional analysis.

### A. The Kentucky Long-Arm Statute Does Not Authorize This Court's Exercise Of Personal Jurisdiction Over Beer

This Court lacks personal jurisdiction over Beer because the Kentucky long-arm statute, KRS 454.210, does not authorize the exercise of such jurisdiction. That statute "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant"; such jurisdiction does not exist *unless* one of those statutory criteria is met. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011); *see* KRS 454.210(2)(a). But plaintiffs have *conceded* that Beer never engaged in any of the kinds of conduct enumerated in KRS 454.210. (*See* Pl. Jurisdictional Mem. at 16-17, admitting "the fact that no jurisdiction exists under Kentucky's long arm statute directly with respect to . . . Beer"; *accord* Beer Decl.). As a matter of law, this concession requires the

---

[20] *See, e.g.*, *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) ("For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process. . . . It is not necessary to decide if due process has been satisfied if the requirements of the long-arm statute are not met.").

conclusion that this Court lacks personal jurisdiction over Beer.

Plaintiffs' sole argument to the contrary evidently is that "conspiracy jurisdiction" exists alongside the nine categories set forth in KRS 454.210, based on the premise that the statute extends to the outer limits of due process (which, according to plaintiffs, permits the exercise of personal jurisdiction based on this theory). (*See* Pl. Jurisdictional Mem. at 16-17, asserting that the absence of jurisdiction under the Kentucky long-arm statute "does not prevent a threshold finding of jurisdiction under the conspiracy theory"). As long as due process permits it, say plaintiffs, this Court can exercise personal jurisdiction over Beer on *all* of their claims because *one* of those claims alleges a conspiracy in which they contend that one or more of the Settling Defendants committed acts in Kentucky. That argument cannot survive the Kentucky Supreme Court's decision in *Caesars*.

In *Caesars* that Court made clear that – contrary to the assumption underlying plaintiffs' theory – Kentucky's long-arm statute does *not* authorize the exercise of jurisdiction to the full limits of what due process permits. 336 S.W.3d at 56-57 ("if the intent of the statute were to reach the outer limits of federal due process, it could easily have been drafted to say precisely that"; "[f]ederal due process cannot act to expand the reach of Kentucky's long-arm statute beyond its statutory language"). [21] Under *Caesars*, "*regardless* of whether federal due process might otherwise allow the assertion of *in personam* jurisdiction," this Court can only exercise personal jurisdiction with respect to a "*cause of action*" that "arise[s] from conduct or activity *of the defendant* that fits into one of the statute's enumerated categories." *Id.* (emphasis added). [22]

---

[21] *Accord Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12CV62-S, 2012 WL 4023789, *1-2 (W.D. Ky. Sept. 12, 2012) (although "Kentucky's long-arm statute, KRS 454.210, . . . has been interpreted, until recently, as reaching the outer limits of what federal law allows," *Caesars* overruled this precedent; "[i]n accordance with *Caesars*, . . . the first inquiry is whether [defendant's] conduct fits into one of the categories enumerated in KRS 454.210").

[22] *Accord Envirometric*, 2012 WL 4023789 at *1 (same); *see* KRS 454.210(2)(b) ("When jurisdiction over a person

As plaintiffs have conceded, *none* of the causes of action plaintiffs have purported to assert against Beer arises from any such conduct or activity by him.[23]  The Complaint should be dismissed in its entirety as against Beer for this reason alone.[24]

### B.  <u>This Court Cannot Constitutionally Exercise Personal Jurisdiction Over Beer</u>

Because plaintiffs' claims against Beer do not fall within any of the nine categories specified in KRS 454.210, the due process analysis that is the second step in the jurisdictional assessment is unnecessary.  (*See supra* at 25 and n.20).  Notwithstanding, should the Court disagree, it should still dismiss the Complaint for lack of personal jurisdiction because plaintiffs cannot in any event demonstrate that the exercise of personal jurisdiction over Beer would comport with the constitutional requirements of due process.  To meet that burden, plaintiffs would have to show three things: (a) that Beer "purposefully avail[ed] himself of the privilege of acting in [Kentucky] or causing a consequence in [Kentucky]"; (b) that each of their claims "arises from [Beer's] activities there"; *and* (c) that those activities "have a substantial enough connection with [Kentucky] to make the exercise of jurisdiction over [Beer] reasonable."  *Miller*, 694 F.3d at 680 (citation and internal quotations omitted).  Plaintiffs' jurisdictional theory cannot satisfy these criteria, either as a general matter or under the specific circumstances here.

### 1.  **Plaintiffs' Theory Of "Conspiracy Jurisdiction" Should Be Rejected As <u>Inconsistent With Due Process</u>**

We emphasize that "conspiracy jurisdiction" has never been explicitly accepted by the

---

is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.").

[23] Even if plaintiffs could expediently change their position and now claim that Beer does come within KRS 454.210(a) because Andersen acted as Beer's "agent" within the meaning of the statute by virtue of the alleged conspiracy (a highly questionable claim – *see infra* at 28-29), the resolution of the conspiracy claim against plaintiffs on the merits as against the Settling Defendants by virtue of plaintiffs' stipulation to the with-prejudice dismissal of that claim (*see supra* at 15) forecloses any such argument.

[24] *Caesars*, 336 S.W.3d at 57 (if the statutory test is not met, then the jurisdictional inquiry ends and "*in personam* jurisdiction may not be exercised"); *accord Envirometric*, 2012 WL 4023789 at *1 (same).

Sixth Circuit  (*see supra* at 14) or by the United States Supreme Court, and therefore remains an open question in this Circuit.  We submit that this Court should reject that jurisdictional theory as squarely at odds with the requirements of due process.

Most fundamentally, a defendant cannot constitutionally "be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or third person"; rather, to support the exercise of personal jurisdiction contacts must "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted; emphasis in original); *accord Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (exercise of personal jurisdiction over defendant based on activities of co-defendant "is plainly unconstitutional"; the minimum contacts threshold "must be met as to each defendant").  The exercise of personal jurisdiction over Beer based solely on the acts of his alleged co-conspirators violates these principles, and thus fails to satisfy the first two constitutional criteria.  On this ground alone, this Court should reject plaintiffs' jurisdictional theory.[25]

In fact, we submit that the Supreme Court's decision in *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953), makes clear that that Court would not accept "conspiracy jurisdiction" as a valid exercise of judicial power.  *Bankers Life* involved a directly analogous question: whether 15 U.S.C. § 15 – which provides for venue in an antitrust action in any district in which a defendant resides, is found, or has an agent – permits the laying of venue in a district based on the activities of the defendant's alleged co-conspirators there.  The plaintiff had contended that, because "co-conspirators are each other's agents," the acts and presence of the

---

[25] *See, e.g., Yen v. Buchholz*, No. C-08-03535 RMW, 2010 WL 1758623, *5 (N.D. Cal. Apr. 30, 2010) (rejecting "conspiracy theory of jurisdiction" as inconsistent with "the Supreme Court's mandate that '[e]ach defendant's contacts with the forum state must be assessed individually'") (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984); alteration in *Yen*).

defendant's alleged co-conspirators could support a finding that the defendant himself "was 'found' and had 'agents' in the district."  346 U.S. at 380.  The district court disagreed, and the Fifth Circuit denied the plaintiff's petition for a writ of mandamus.

The Supreme Court affirmed.  In so doing, the Court held among other things that the plaintiff had "not met the burden of showing that its right to issuance of the writ [of mandamus was] clear and indisputable" – to the contrary, the Court observed that the plaintiff's theory that venue could be based on the acts of an alleged co-conspirator had "all the earmarks of a *frivolous* albeit ingenious attempt to expand the statute."  *Id*. at 384 (emphasis added).  As other courts have noted, "the contention that personal jurisdiction, the exercise of which is governed by strict constitutional standards, may depend upon the imputed conduct of a co-conspirator" is "[t]hat much more frivolous."  *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976); *accord In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp.2d 145, 157-58 (D. Me. 2004) (rejecting the "conspiracy doctrine" of jurisdiction on this basis).  Plaintiffs' jurisdictional theory should similarly be rejected here on this basis alone.

Even if these defects in the theory of "conspiracy jurisdiction" could be overlooked, it would nevertheless fail because it cannot satisfy the third constitutional criterion: the exercise of personal jurisdiction based on that theory is simply not constitutionally reasonable.  Plaintiffs' version of "conspiracy jurisdiction" is a judge-made doctrine that purports to authorize what amounts to nationwide service of process for state-law conspiracy claims.  Under it, by the sheer expedient of pleading such a claim a plaintiff can ostensibly bypass the jurisdictional analysis entirely.  But although *Congress* has authorized such a scheme with respect to certain kinds of federal claims, *only* Congress can do so; the courts lack any such authority.[26]  Plaintiffs'

---

[26] *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 696 (1982) ("If a court does not have jurisdiction over a party, then it may not create that jurisdiction by judicial fiat."); *accord Chandler v.*

conspiracy theory of jurisdiction should be rejected for this reason as well.[27]

Plaintiffs' theory suffers from an additional constitutional flaw: it would improperly deprive Beer of his due process right to challenge this Court's jurisdiction over him *before* being required to litigate the merits of plaintiffs' claims here.  It is well-settled that the constitutionally-required "minimum contacts" analysis exists not only to ensure that courts do not issue *judgments* against defendants who do not have the requisite relationship with the forum, but also to "protect[] the defendant against *the burdens of litigating in a distant or inconvenient forum*." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (emphasis added).

---

*Barclays Bank PLC*, 898 F.2d 1148, 1154 (6th Cir. 1990) ("in the absence of some provision [of federal law] authorizing nationwide service of process, the district court's power to exercise in personam jurisdiction is limited by . . . the [state's] long-arm statute") (citations and internal quotations omitted). Federal statutes that provide for nationwide service of process for certain types of actions include the Employee Retirement Income Security Act (*see* 29 U.S.C. § 1132(e)(2)); the Commodity Exchange Act (*see* 17 U.S.C. § 13a-1(e)); the Sherman Antitrust Act (*see*); the Securities and Exchange Act of 1934 (*see* 15 U.S.C. § 78aa(a)); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"; *see* 18 U.S.C. § 1965(b)).  In this respect, we note in particular that RICO expressly provides that a district court can exercise jurisdiction over (a) any person who "resides, is found, has an agent, or transacts his affairs" in the district (18 U.S.C. § 1965(a)); and (b) "other parties residing in any other district" where "it is shown that the interests of justice require that [they] be brought before the court" (18 U.S.C. § 1965(b)).  Although the Sixth Circuit has not addressed these provisions, "the majority of circuits" that have done so have interpreted § 1965(b) as authorizing nationwide service of process *only* where (a) "personal jurisdiction based on minimum contacts [is] first established as to at least one defendant pursuant to 18 U.S.C. § 1965(a)"; *and* (b) the interests of justice require allowing the plaintiff "to bring all members of a RICO conspiracy before a single court." *Carvel v. Griffin*, No. 07-273-JJF, 2008 WL 4922432, *7-8 (D. Del. Nov. 18, 2008) (gathering cases).  If the acts of one alleged co-conspirator in a jurisdiction could give rise to personal jurisdiction over other alleged co-conspirators as a matter of common law, it would not have been necessary for Congress to legislate such nationwide service of process for RICO claims.

[27] We do not here concede that plaintiffs' version of "conspiracy jurisdiction" – pursuant to which a court exercises personal jurisdiction based solely on the pleadings – is consistent with Sixth Circuit precedent.  In fact, it is not; rather, the Sixth Circuit has made clear that the *only* version of "conspiracy jurisdiction" that it *might* accept is one that required a plaintiff opposing a motion to dismiss for lack of personal jurisdiction to offer at least some proof of the conspiracy that forms the alleged basis for such jurisdiction.  *See Chrysler Corp.*, 643 F.2d at 1236-37 (to be constitutionally valid, "conspiracy jurisdiction" would at a minimum have to be based on "a *factual showing* of a conspiracy and also of a connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent," rather than solely on the plaintiff's allegations) (emphasis added; citation and internal quotations omitted).  Plaintiffs, however, have relied solely on their own allegations and have never (either in response to Beer's original motion to dismiss or otherwise) offered any proof of a conspiracy – contending that their jurisdictional theory does not require them to do so.  (*See* Pl. Jurisdictional Mem. at 17).  In response to any amended complaint that actually contains allegations "as to what he did in relation to the conspiracy alleged" (which, as the Court has already observed, the current Complaint does not – *see* Exh. A at 6) – Beer reserves the right to submit sworn denials of any such allegations in support of a further motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and to argue that such sworn denials require plaintiffs to submit (at a minimum) *prima facie* evidence of a conspiracy.  (*See supra*, n.7).

Under plaintiffs' theory, this Court could exercise personal jurisdiction based solely on a finding that plaintiffs have adequately *alleged* a conspiracy, without even requiring them to present (at the very least) prima facie evidence that a conspiracy *actually* existed and Beer *actually* was a knowing participant in it.  (*See* Pl. Jurisdictional Mem. at 17).  Any determination of whether there is a factual basis for the exercise of personal jurisdiction must (according to plaintiffs) simply await an adjudication on the merits: if they prevail on their conspiracy claim, then this Court had personal jurisdiction over Beer; if they do not, then this Court never obtained such jurisdiction – although by that point Beer will have fully litigated the merits of plaintiffs' claims here.  Plaintiffs' theory thus skips the critical (and constitutionally-required) threshold inquiry as to whether Beer's contacts with Kentucky are *in fact* sufficient "such that *maintenance* of the suit 'does not offend traditional notions of fair play and justice'" and it is "'reasonable . . . to require [him] to defend [this] particular suit.'"  *Worldwide Volkswagen*, 444 U.S. at 292 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)) (additional citation and internal quotations omitted; first alteration in *Worldwide Volkswagen*); *accord Bird v. Parsons*, 289 F.3d 865, 872-73 (6th Cir. 2002) (court must determine whether it has personal jurisdiction "*before* proceeding to the merits of the case") (emphasis added).  This flaw represents an additional, independent ground on which this Court should reject that theory.

2.  <u>**The Exercise Of "Conspiracy Jurisdiction" Here Is Not Reasonable**</u>

Even if "conspiracy jurisdiction" might in principle be authorized under certain circumstances, that would not end the inquiry.  Rather, the constitutional due process analysis still requires plaintiffs to demonstrate that the exercise of such jurisdiction is reasonable *in this case.*  Plaintiffs cannot do so, particularly in light of the pre-answer dismissal with prejudice of all of the Settling Defendants.

In this regard, the Supreme Court has instructed:

31

> [T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute . . .; the plaintiff's interest in obtaining convenient and effective relief . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . ; and the shared interest of the several States in furthering fundamental substantive social policies . . . .

*World-Wide Volkswagen*, 444 U.S. at 292 (collecting cases; citations omitted).[28]  *None* of these factors supports the exercise of personal jurisdiction here.  Specifically:

- As a resident of the State of Connecticut who does not do (and has never done) any business in Kentucky (Compl. ¶ 21; Beer Decl. ¶ 3-4), the burden on Beer of having to litigate in this forum is substantial.

- Kentucky's interest in this dispute, in contrast, is minimal: of the eleven named plaintiffs (three individuals and eight entities), only two (one individual and one entity) are citizens of Kentucky.  The other nine are citizens of Ohio (although some of them apparently share a single Kentucky post-office box for purposes of this litigation).  (*See* Compl. ¶¶ 7-17; *cf.* Compl. at 1-2 (caption)).

- Plaintiffs do not need a Kentucky forum in order to obtain "convenient and effective relief," nor is there anything about that forum that could enhance the efficiency of a resolution – in light of plaintiffs' pre-answer dismissal of their claims against the Settling Defendants, there is no need for a single forum in which personal jurisdiction can be exercised over multiple co-defendants.

- In light of these facts, no "fundamental substantive social polic[y]" favors permitting plaintiffs to sue Beer in Kentucky.

In short, if the exercise of "conspiracy jurisdiction" is ever constitutionally justified at all, it is not justified here.

    We stress that our research discloses no case in which any court has exercised "conspiracy jurisdiction" to allow a case to proceed against a *single* defendant that did not personally perform acts within the forum in furtherance of the alleged conspiracy – which is what plaintiffs are asking this Court to do here against Beer, the sole remaining defendant in this action.  Rather, in every case plaintiffs have cited in support of this theory (and every case we

---

[28] *Accord Burger King*, 471 U.S. at 476-77 (same).

have found that applies it), (a) the alleged co-conspirator whose acts form the basis for the

assertion of such jurisdiction is a participating co-defendant at the time the jurisdictional

assessment is made, and/or (b) the defendant challenging jurisdiction actually engaged in

conduct within or purposefully directed at the forum.  Even in RICO cases (where *Congress* has

provided for nationwide service of process), personal jurisdiction cannot be exercised over a

non-resident co-conspirator *unless* it is necessary to do so in order "to bring all members of a

RICO conspiracy before a single court."  (*See supra*, n.26).  A common-law theory of

"conspiracy jurisdiction" can surely go no further.  There is no personal jurisdiction here.

*      *      *      *      *

The "conspiracy theory" on which plaintiffs ask this Court to exercise personal

jurisdiction over Beer finds no support in Kentucky law; it should be rejected on that basis

without further analysis.  But it also violates the constitutional requirements of due process –

especially as plaintiffs ask this Court to apply it in this particular case.  For any or all of these

reasons, this action should be dismissed as against Beer for lack of personal jurisdiction.

III. **IF THE COURT DECLINES TO DISMISS THIS ACTION IN ITS ENTIRETY AS AGAINST BEER, IT SHOULD VACATE THE ORDERS DISMISSING THE SETTLING DEFENDANTS FROM THE ACTION**

If the Court allows this action to proceed against Beer in any respect, it should vacate the

orders dismissing the action as against the Settling Defendants (Doc # 134 and 135).[29]  Although

the applicable Rules required that Beer be given an opportunity to be heard as to whether – and

subject to what conditions – the Settling Defendants could be dropped from the case, Beer was

---

[29] This Court has the clear authority to revisit those interlocutory orders, both under Fed. R. Civ. P. 54(b) and as a matter of its inherent power.  *See* Fed. R. Civ. P. 54(b) (any order "that adjudicates . . . the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all parties' rights and liabilities"); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment . . . [and] may modify, or even rescind, such interlocutory orders.") (citations omitted).

*never* given any such opportunity. The Court has thus *never* considered the substantial prejudice that dropping those defendants at this juncture will cause to Beer if the case continues as against him, including (a) depriving him of the ability to assert crossclaims against them for indemnification; (b) making discovery significantly more burdensome; and (c) depriving him of the ability to cross-examine them and their agents at trial. This prejudice requires the vacatur of the orders dismissing the Settling Defendants from this case, with a direction that plaintiffs and the Settling Defendants may re-apply for such orders (on proper notice to Beer) only *after* Beer's time to assert crossclaims has expired – whereupon any such application can be considered in light of all relevant factors, including the question of whether any of the Settling Defendants is an indispensible party (*see supra*, Point I.B), the existence of any such crossclaims, and the need for discovery and trial testimony from the Settling Defendants if the action proceeds.[30]

More specifically, by purporting to dismiss this action as against the Settling Defendants by stipulation under Fed. R. Civ. P. 41, plaintiffs and the Settling Defendants attempted to employ a mechanism for that dismissal that ostensibly required no input from (and permitted no objection by) Beer. But while Rule 41 would have permitted plaintiffs to voluntarily dismiss the *entire* action by filing a stipulation "signed by *all* parties who have appeared,"[31] it does not permit plaintiffs to dismiss their claims as to fewer than all of the defendants.[32]

Rather, the only vehicle through which plaintiffs and the Settling Defendants could request a dismissal as to fewer than all of the defendants was a motion pursuant to Fed. R. Civ.

---

[30] As noted above, we do not take issue with plaintiffs' ability to settle their claims against the Settling Defendants. Rather, the issue is what impact that settlement will have on this ongoing lawsuit. (*See supra*, n.1).

[31] Fed. R. Civ. P. 41(a)(1)(A)(i) (emphasis added). In order to proceed under this provision plaintiffs would not only have to dismiss the entire action; they would also have to get the consent of *all* of the defendants who have appeared – including Beer. They undisputedly did neither of these things. (*See supra* at 12 and n.6).

[32] *See NECA-IBEW Pension Fund v. Cox*, No. 1:11-cv-451, 2011 WL 6751459, *3 (S.D. Ohio Dec. 22, 2011) (striking a purported Rule 41 dismissal as against fewer than all defendants because that Rule "provides for the voluntary dismissal of an 'action' not a 'claim'") (collecting cases; citations and internal quotations omitted).

P. 21 – which (among other things) permits a Court "[o]n motion" to "drop a party" on such terms as it may deem "just."  *See, e.g., EQT Gathering, LLC v. A Tract of Property Situated in Knott Cnty., KY*, No. 12-58-ART, 2012 WL 3644968, *2-3 (E.D. Ky. Aug. 24, 2012) (explaining Sixth Circuit rule; collecting cases).  As the Court explained in *EQT Gathering*:

> Rule 41 empowers plaintiffs to "abort a complaint" and bars the court from interfering, but only under circumstances that guarantee a lack of prejudice to the other side – that is, when unilaterally dismissing all claims against all defendants at the outset of the case under Rule 41(a)(1)(A)(i) or by getting *all parties who have appeared* to agree to dismissal under Rule 41(a)(1)(A)(ii). . . . Dropping less than the entirety of an action, however, risks prejudice to the other parties. . . . So rather than leaving that evaluation of prejudice up to plaintiffs alone, Rules 21 and 41(a)(2) opt for a court's determination of prejudice, which also gives the other parties a chance to object to or request conditions on dismissal.

2012 WL 3644968 at *3 (emphasis added; citations omitted).[33]

Plaintiffs and the Settling Defendants undisputedly did not proceed under Rule 21 (or under any Rule that would have required a motion on notice).  Instead, they filed stipulations signed *only* by plaintiffs and the Settling Defendants.  The Court then "So Ordered" those stipulations without giving Beer the "chance to object or to request conditions on dismissal" that – as the Court explained in *EQT Gathering* – Rule 21 requires.  (*See* Doc # 134 and 135).[34] This procedure violated the applicable rules.

We submit that this violation, in itself, requires the vacatur of those dismissal orders.  But Beer's objection is not merely technical.  If this action is permitted to continue against Beer in the absence of the Settling Defendants, he will be substantially prejudiced in two separate respects.  First, he will be deprived of his right to assert crossclaims against the Settling

---

[33] *Accord NECA-IBEW Pension Fund*, 2011 WL 6751459, at *3 (plaintiffs' "assertion that it is 'immaterial' which Rule is invoked [as between Rule 21 and Rule 41] is wrong" because "dismissal under Rule 41 deprives the Defendants of a full and fair opportunity to challenge the dismissal of [the purportedly-dismissed defendant]").

[34] Both at the time plaintiffs filed these stipulations and when the Court "So Ordered" them, this action was subject to a court-ordered stay of all proceedings, which was only subsequently lifted.  (Doc # 106; *see* Doc # 140 (order lifting stay)).

Defendants for indemnification.[35]  Although we do not believe that plaintiffs will ultimately be

able to prove any wrongdoing by Beer, such proof would not obviate his indemnification rights

against the Settling Defendants.  Rather, the Settling Defendants will be liable to reimburse Beer

for any damages awarded against him for the simple reason that – if plaintiffs can prove that they

suffered any compensable damage at all – the acts of those defendants will necessarily have been

"the primary and efficient cause" of any such damage, and/or will have involved fault of a

substantially greater scope and character than any alleged fault on the part of Beer.  *See Cochran

v. Folger*, No. 5:09-302-JMH, 2010 WL 2696634, *3 (E.D. Ky. Jul. 6, 2010) (collecting cases,

citations and internal quotations omitted).[36]

Because the Settling Defendants were previously served and made parties to this case,

Beer should be able to assert his indemnification claims against them by way of crossclaims.

But the Settling Defendants were dismissed from the case *before* Beer had served any pleading

in this action (and before his time to do so had expired); as a result, he has not yet had a fair

opportunity to assert any such crossclaims.  *See* Fed. R. Civ. P. 13(g) (providing that crossclaims

may be asserted only in a "pleading").  The dismissal of the Settling Defendants thus deprives

Beer of the ability to assert such crossclaims; instead, if he wishes to litigate his indemnification

claims in this action he must (at a minimum) undertake the burden of serving a new summons

and complaint upon each of the Settling Defendants under Fed. R. Civ. P. 14(a).[37]  This alone is

---

[35] Plaintiffs' settlements with those defendants do not impact Beer's entitlement to indemnification against them. *See, e.g., York v. Petzl Am., Inc.*, 353 S.W.3d 349, 353 (Ky. Ct. App. 2010) (collecting cases).

[36] Among other things, Beer will plead in his crossclaims (and the facts will ultimately show) that he is not a lawyer or tax accountant, never personally dealt with plaintiffs, and reasonably relied on the Settling Defendants (together with their individual agents, including the Andersen representatives that plaintiffs admit acted as "middle man" and with whom plaintiffs concede they had a long-standing  relationship) with respect to all relevant communications. To the extent that plaintiffs are able to prove that relevant facts were known but were not communicated (or were misrepresented) to them, as between Beer and the Settling Defendants the fault lies with the Settling Defendants.  As a result, under applicable law they will be liable to Beer for any damages awarded against him.

[37] Because Beer has a right to bring each of the Settling Defendants back into the case through third-party practice

sufficient prejudice to warrant the vacatur of the dismissals as to the Settling Defendants if and to the extent that this action is permitted to proceed as against Beer.

There is, however, a second form of prejudice that Beer will suffer if he is forced to defend this action without the Settling Defendants as parties. As explained above, those defendants are central to the claims and alleged conduct at issue in this action. As a result, a substantial portion of the information relevant to plaintiffs' claims and necessary to Beer's defenses is in the possession of the Settling Defendants, *none* of whom are located in Kentucky. (*See, e.g.,* Compl. ¶¶ 18, 19, 23-26). Among other things:

- Because Andersen and its personnel "acted as middle man for virtually all of [plaintiffs'] communications with Bricolage" (Strassel Decl. ¶ 10) and were generally responsible for recommending the investments at issue here, only Andersen has the information necessary to verify and/or challenge any assertion by plaintiffs as to what they were told about the investments. Any such assertion can therefore only be effectively tested with information/testimony from Andersen.

- Plaintiffs' contention (Compl. ¶¶ 35-39) that the Curtis Firm had an undisclosed relationship with ICA and IPG that undermined the Curtis Firm's independence (and thus the validity of its opinion letters) can only be effectively tested with information/testimony from the Curtis Firm, Bricker, ICA and/or IPG.

- Plaintiffs' allegations that the warrants they purchased from Prism had previously been owned by ICA (*id.* ¶¶ 42, 43) and that the money they paid to Prism for those warrants was ultimately divided among "Andersen, Beer, Bricolage, Bricker, the Curtis Firm, ICA, IPG, Prism and/or Veera" (*id.* ¶ 47) can only be effectively tested with information/testimony from Prism, ICA, IPG, Andersen, Bricker and the Curtis Firm.

- Plaintiffs' contentions concerning information they received from "Eric Sullivan of ICA" about the warrants they had purchased (*see* Strassel Decl. ¶ 21) can only be effectively tested with information/testimony from ICA and Sullivan.

- Plaintiffs' contentions that the Curtis Firm's opinion letters were "canned, deceptive prefabricated forms" and failed to take adequate account of IRS notices (Compl. ¶¶ 49-51)

---

under Rule 14(a) (pursuant to which his time to file a third-party complaint without leave of the Court has not yet run), dismissing them from the case was a meaningless act in any event. Nevertheless, such third-party practice presents complications that Beer should not be required to bear – including not only the need to serve each of the Settling Defendants with appropriate process, but also potential arguments by the Settling Defendants asserting (incorrectly in our view) that the Court's orders dismissing them from the case "with prejudice" should somehow prevent their being brought back in pursuant to Rule 14.

can only be effectively tested with information/testimony from the Curtis Firm and Bricker.

- Plaintiffs' claim that "despite a specific inquiry by [p]laintiffs" Andersen and the Curtis Firm did not adequately inform them of the import of certain IRS notices (*id.* ¶ 52) can only be effectively tested with information/testimony from Andersen, Bricker and the Curtis Firm.

- Plaintiffs' allegations about what Andersen "advised" them in connection with the preparation and submission of their tax returns (*id.* ¶ 54) can only be effectively tested with information/testimony from Andersen.

- Plaintiffs' allegations about the Curtis Firm's purported failure to adequately advise them about a certain amnesty program (*id.* ¶ 55) can only be effectively tested with information/testimony from the Curtis Firm and Bricker.

It is thus clear, even at this pre-answer stage, that discovery from the Settling Defendants and trial testimony from their representatives is crucial to the factual development of this case. Without such discovery and testimony, plaintiffs' assertions about what they were told, by whom and when (that is, the key elements of all of their claims) will stand entirely unrebutted.

By purporting to dismiss the Settling Defendants from the case, plaintiffs and the Settling Defendants have created a situation in which Beer will have to attempt to obtain this information and testimony through non-party discovery in the various states where the Settling Defendants are located – and will have to litigate any dispute over such discovery in the district courts in those states rather than in this Court.[38]  Perhaps most consequential, Beer will be denied the opportunity to cross-examine the Settling Defendants and their agents live at trial, because they are beyond the subpoena power of this Court.  These facts represent substantial prejudice to Beer wholly apart from any crossclaims he may have against the Settling Defendants, and separately warrant the vacatur of the orders dismissing the Settling Defendants.[39]

---

[38] Those states apparently include, at a minimum, California (for ICA and IPG), Delaware (for Prism), New York (for Bricker and the Curtis Firm), and Illinois (for Andersen).  (*See* Compl. at 2-3; *id.* ¶¶ 18, 19 and 23-26).

[39] If plaintiffs had properly moved pursuant to Rule 21 Beer would have requested, at a minimum, that if the action were to continue against Beer the Court condition any dismissal of the Settling Defendants on their agreement (a) to make documents and witnesses available for discovery, (b) to provide trial testimony, and (c) to consent to the jurisdiction of this Court with respect to any issues and/or disputes relating to such discovery or trial testimony.  *See* Fed. R. Civ. P. 21 (court may add or drop a party "on just terms"); *see generally* C. Wright, A. Miller, M. Kane & R.

*        *        *        *        *

Plaintiffs and the Settling Defendants made the tactical choice to attempt to proceed under Rule 41 even though they did not meet its requirements – and even though the Rule makes this clear on its face by providing for dismissal only of "an action" (and not of individual claims or parties) and requiring any stipulation respecting such a dismissal to be "signed by all parties who have appeared" (rather than only by some of them).  By choosing this route instead of the motion on notice prescribed by Rule 21, plaintiffs and the Settling Defendants were able to obtain orders dismissing this action as against the Settling Defendants without ever affording Beer an opportunity to be heard.  They thus ostensibly avoided any "risk" that this Court might (a) condition the dismissal they sought on a corresponding dismissal with respect to Beer, for the reasons detailed above in Point I; (b) decline to permit any such dismissal prior to the expiration of the deadline for the assertion of crossclaims by Beer (and rule that in the event any such crossclaims are asserted there can be no such dismissal prior to their disposition); or (c) condition any such dismissal on an agreement by the Settling Defendants to submit to the jurisdiction of this Court for discovery purposes and for purposes of providing testimony at trial.

Plaintiffs and the Settling Defendants should not be permitted to sidestep Beer's rights and the requirements of the Rules in this manner.  Rather, if the Court allows this action to proceed against Beer, it should vacate the dismissal orders and direct that plaintiffs and the Settling Defendants may move under Rule 21 (on proper notice to Beer) to drop the Settling Defendants from the case only *after* Beer's time to assert crossclaims has run – whereupon any such motion can be considered in light of all of the circumstances, including but not limited to

---

Marcus, *Federal Practice and Procedure 3d* § 1688 (2001 & Supp. 2012) (noting that in connection with an order dropping a party a court may impose conditions, including a requirement that a party to be dropped agree to provide trial testimony).  Such conditions, however, would not have obviated the prejudice resulting from the dismissal of the Settling Defendants before Beer had a fair opportunity to assert crossclaims against them.

(a) whether the case can proceed at all in the absence of the Settling Defendants; (b) any crossclaims that Beer has by then asserted; and (c) the need to secure discovery and trial testimony from the Settling Defendants in the event the action proceeds.

## CONCLUSION

The Court should: (a) dismiss plaintiffs' conspiracy claim against Beer *with prejudice* (either based on *Frow/Ajami* or under Rule 19), whereupon it should dismiss the balance of the Complaint as against Beer for want of personal jurisdiction; or (b) in the alternative, dismiss the Complaint in its entirety as against Beer for want of personal jurisdiction; or (c) in the alternative, vacate the orders dismissing the Settling Defendants from this case and direct that plaintiffs and the Settling Defendants may re-apply for such orders only on notice to Beer, and only after his time to assert crossclaims in this action has expired.

Dated: April 22, 2013

> Respectfully submitted,
>
> REISENFELD & ASSOCIATES, LPA
>
> By:___/s/ David C. Nalley_____
>          David C. Nalley
> 3962 Red Bank Road
> Cincinnati, Ohio  45227
> Tel: 513-322-7000
> Fax: 513-322-7099
>
>          -and-
>
> David L. Katsky, Esq. (admitted *pro hac vice*)
> Adrienne B. Koch, Esq. (admitted *pro hac vice*)
> KATSKY KORINS LLP
> 605 Third Avenue
> New York, New York 10158
> Tel.: (212) 953-6000
> Fax.: (212) 953-6899
>
> ***Attorneys for Defendant Andrew D. Beer***

## CERTIFICATE OF SERVICE

On April 22, 2013, I electronically filed this document through the ECF system, which will send a notice of electronic filing to:

Stanley M. Chesley, Esq. stanchesley@wsbclaw.com
James Rubin Cummins, Esq. jcummins@wsbclaw.com
Jean M. Geoppinger, Esq. jmccoy@wgmlpa.com
Paul M. DeMarco, Esq. demarcoworld@yahoo.com

*Attorneys for Plaintiffs*

Jeanne M. Cors, Esq. cors@taftlaw.com
Russell Stanfield Sayre, Esq. sayre@taftlaw.com
Robert B. Craig, Esq. craigr@taftlaw.com

*Attorneys for Defendants,*
*Curtis, Mallet-Prevost, Colt & Mosle, LLP*
*and William L. Bricker, Jr.*

Richard J. Idell, Esq. richard.idell@idellseitel.com
Donald L. Stepner, Esq. dstepner@aswdlaw.com

*Attorneys for Defendants, Integrated Capital Associates,*
*Intercontinental Pacific Group, Inc. and*
*Prism Connectivity Ventures, LLC*

Douglas E. Whitney, Esq. dwhitney@mwe.com
Jeffrey E. Stone, Esq. jstone@mwe.com
Erin M. Alkire, Esq. Erin.Alkire@manahan.org

*Attorneys for Defendant,*
*Arthur Andersen, LLP*

I further certify that I mailed the foregoing document and the notice of electronic filing via First Class mail to the following on this the 22nd day of April, 2013.

Jeanne M. Cors, Esq.
Russell Stanfield Sayre, Esq.
Robert B. Craig, Esq.
Taft, Stettinius & Hollister, LLP - Cincinnati OH
425 Walnut Street
Suite 1800 Firstar Tower
Cincinnati, OH 45202

*Attorneys for Defendants,*
*Curtis, Mallet-Prevost, Colt & Mosle, LLP*
*and William L. Bricker, Jr.*

Richard J. Idell, Esq.
Gregory A. Rutchik, Esq.
Idell & Seitel LLP
465 California Street
Suite 300
San Francisco, CA 94118

Donald L. Stepner, Esq.
Adams, Stepner, Woltermann & Dusing, PLLC
40 W. Pike Street
P.O. Box 861
Covington, KY 41012-0861

*Attorneys for Defendants, Integrated Capital Associates,*
*Intercontinental Pacific Group, Inc. and*
*Prism Connectivity Ventures, LLC*

Jeffrey E. Stone, Esq.
Douglas E. Whitney, Esq.
Jocelyn D. Francoeur, Esq.
McDermott, Will & Emery, LLP - Chicago
227 W. Monroe Street
Chicago, IL 60606-5096

Erin M. Alkire, Esq.
Thompson Hine LLP - Cincinnati
312 Walnut Street
Suite 1400
Cincinnati, OH 45202-4089

*Attorneys for Defendant,*
*Arthur Andersen, LLP*

/s/ David C. Nalley
David C. Nalley, Esq.