UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 05-59-DLB-JGW

WAYNE CARLISLE, et al.                                                    PLAINTIFFS

vs.                    **MEMORANDUM OPINION & ORDER**

ANDREW BEER & SAMYAK C. VEERA                                   DEFENDANTS

*************************

Defendant Andrew Beer has moved to dismiss the complaint against him for lack of personal jurisdiction (Doc. # 155). Because Plaintiffs have not alleged facts sufficient to show that the Court can exercise personal jurisdiction over Mr. Beer, the claims against him will be **dismissed without prejudice**.

## I. FACTUAL AND PROCEDURAL HISTORY

This case comes before the Court after a trip to the Supreme Court and back. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). The dispute stems from the June 1999 sale of a valuable construction equipment company. (Doc. # 1, at 8). After that sale, the Plaintiffs asked their accountants, Arthur Anderson LLP, to investigate methods of reducing tax liability. (*Id.*) As part of that process, Arthur Anderson introduced the Plaintiffs to Bricolage Capital, (*Id.*), a now-defunct financial services firm. Defendant Andrew Beer was a principal at Bricolage. (*Id.* at 6).

The Plaintiffs eventually took part in a tax scheme that allowed Plaintiffs to acquire an interest in various partnerships while paying very little (or nothing). (*Id.* at 8-9). When

1

those partnership interests were disposed of, Plaintiffs could write off their interests as large tax losses, despite the insignificant cost of acquiring the interest in the first place. (*Id.*)  As the Supreme Court noted, the tax shelter was simply "too good to be true." *Carlisle*, 556 U.S. at 626.  The IRS ruled that the scheme was an illegal tax shelter, setting in motion a series of events that eventually led to the 2005 diversity suit, in which the Plaintiffs sought recovery against their former legal and financial advisers.  (*Id.* at 626-27).

After the Supreme Court's decision, Plaintiffs settled with most of the defendants on November 7, 2012.  (Doc. # 134).  When Defendant Beer filed this Motion, he was one of only two defendants remaining in the case.  His contacts with both Plaintiffs and the state of Kentucky are virtually nonexistent: the Plaintiffs do not suggest–and the record does not show–that Plaintiffs directly transacted business with Defendant Beer.

**II.    DISCUSSION**

Plaintiff bears the burden of showing that the Court has personal jurisdiction over each defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  And "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Id.*  When the Court rules on a personal jurisdiction motion absent an evidentiary hearing, it must construe factual allegations in the light most favorable to the Plaintiff.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  "To defeat such a motion, a party in CompuServe's position need only make a prima facie showing of jurisdiction."  *Id.*  The question before the Court, then, is whether the Plaintiff has made a prima facie case such that the Court can exercise personal jurisdiction over the Defendant.

To establish the prima facie case, the Plaintiff must show that jurisdiction is authorized by both (1) Kentucky law and (2) the Due Process Clause of the U.S. Constitution. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Each condition must be satisfied, but Plaintiff has failed to show that either condition is met here.

### A. The Due Process Clause prevents the Court from exercising jurisdiction over the Defendant.

"The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with "traditional notions of fair play and substantial justice." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has recognized that a state has "general" jurisdiction over a defendant if that defendant "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In their response to the Defendant's original motion to dismiss, Plaintiffs admit that the Defendant has not had such "pervasive" contacts with Kentucky to justify general jurisdiction, (Doc. # 52, at 9) and the Court sees nothing in the record to contradict this admission.

Alternatively, a Court may exercise specific jurisdiction over a defendant if the defendant "purposefully established minimum contacts in the forum state." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996) (citations omitted). In their response to the Defendant's prior motion to dismiss, the Plaintiffs argued that the Court could exercise this special jurisdiction because the Defendant was part of a conspiracy. (Doc. # 52, at 9). Under this theory, the Defendant establishes the necessary

3

minimum contacts with Kentucky through his relationship with fellow co-conspirators, at least one of whom had sufficient contacts with Kentucky to face the Court's jurisdiction.

The Sixth Circuit has never explicitly endorsed the conspiracy theory of jurisdiction. *See* Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1236 (6th Cir. 1981) ("This court has not addressed the question of whether the acts of a coconspirator, performed in the forum state in furtherance of the conspiracy, constitute sufficient minimum contacts to establish personal jurisdiction over an absent coconspirator who has no other contact with the forum.") The Court need neither accept nor reject Plaintiff's jurisdictional theories to rule in Defendant's favor, however. Because even if participation in a conspiracy was a basis for jurisdiction in the Sixth Circuit, Plaintiffs fail to show (or even try to show) that it applies here.

"The leading case on this 'conspiracy theory' of jurisdiction is *Leasco Data Processing Equipment Corp. v. Maxwell*, 319 F.Supp. 1256 (S.D.N.Y.1970)." *Chrysler Corp.*, 643 F.2d at 1236. Under *Leaseco*, if a Plaintiff shows that 1) a conspiracy existed and 2) there is a "connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent," then a court may exercise jurisdiction over the absent conspirator. *Id.* Defendant asserts that, because the claims against the *present* conspirators have been dismissed, there can be no connection to the *absent* conspirator–the Defendant–and thus the Court cannot exercise personal jurisdiction.

Defendant is correct. "A voluntary dismissal with prejudice operates as a final adjudication on the merits...." Warfield v. AlliedSignal TBS Holdings, Inc., 267 F.3d 538, 542 (6th Cir. 2001). In the present matter, Plaintiffs agreed to a voluntary dismissal with prejudice of the claims against Arthur Andersen, LLC, Curtis, Mallet-Prevost, Colt & Mosle,

4

LLP and William L. Bricker, Jr. (Doc. # 134). Consequently, under *Warfield*, this amounts to a final adjudication on the merits of the claims asserted against all of those prior defendants.

Such an adjudication effectively eliminates any conspiracy jurisdiction in this case. Under *Chrysler Corp.*, conspiracy jurisdiction requires a connection between the "conspirator who was present" in the jurisdiction and the conspirator who was not. The voluntary dismissal–which, again, counts as an adjudication on the merits against Plaintiffs' claims–severed the link between the Defendant and the conspirators who had some contact with Kentucky. That link depended primarily on Arthur Andersen, who "acted as middle man for virtually all of [Plaintiffs'] communications with Bricolage." (Doc. # 55, at 2.) With Arthur Anderson out of the equation, there are no longer any conspirators who had contact with Kentucky, and thus no link between Kentucky and the Defendant Beer here.

In *Ajami v. Saab*, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012), the District Court for the Eastern District of Michigan confronted a similar situation and concluded that there can be no conspiracy in the absence of a primary offense. In that case, two defendants had allegedly conspired with a police officer to wrongfully arrest the plaintiff. *Id.* at 3. But the plaintiff's arguments against the co-conspirators failed because their claims against the police officer had been voluntarily dismissed with prejudice. This "operate[d] as a rejection of the Plaintiff's claims...." Ajami v. Saab, 08-12088, 2012 WL 5906399, at 6 (E.D. Mich. Nov. 26, 2012). Without a live claim against the police officer, there could be no conspiracy claim against the defendants who allegedly worked with the police officer. Conspiracy, like tango, requires at least two participants. That is equally true when the apparent conspiracy lies at the heart of a jurisdictional argument, as here.

There are, admittedly, a number of unresolved questions. What little the Court knows of former Defendant Bricolage Capital comes from Defendant's brief, which claims that Plaintiffs settled their claims against Bricolage after the latter's bankruptcy. (Doc. # 156, at 13 n. 2). The record provides little detail regarding the specifics of that settlement–whether it resulted in dismissal with or without prejudice, for instance–or its effect on the rights of the parties to this dispute. Further, the Court's only knowledge of Defendant's nonexistent contacts with Kentucky come from Defendant's own filings.

Yet the Court is under no obligation to salvage Plaintiff's argument or invent allegations that Plaintiff might have made. And the current record, unchanged as it is by Plaintiff's legal arguments or factual assertions, leaves little doubt that the Court cannot exercise personal jurisdiction over Defendant Beer.

    **B.**    **Kentucky's long-arm statute is not so extensive that it reaches Defendant.**

To meet the second element of the prima facie case, Plaintiff must show that the Kentucky long-arm jurisdictional statute covers the Defendants. The Kentucky Supreme Court has emphasized that the reach of K.R.S. § 454.210, which governs personal jurisdiction over out-of-state defendants, is narrower than that allowed by the Due Process Clause of the U.S. Constitution. See, e.g., *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). Under that statute, the Defendant's conduct must fall within an enumerated category, or else the Court may not exercise personal jurisdiction. *Id.*

Turning to those categories, most of them clearly do not apply to the commercial transaction at issue in this case. The only categories that might apply, K.R.S. §§ 454.210(2)(a)(1) and (2), require that the business transactions happen "in this

6

Commonwealth." (Emphasis added). Yet Plaintiffs make no effort to show that the Defendants ever resided in Kentucky or contracted directly with anyone who did.

In their response to the Defendant's first Motion to Dismiss, Plaintiffs essentially bypass the question of whether the Kentucky long-arm statute encompasses conspiracy jurisdiction. They merely assert that the Kentucky long-arm statute will reach as far as the Due Process Clause lets it, and then proceed to their Due Process arguments. While this was arguably true when Plaintiffs filed their complaint, the Kentucky Supreme Court has since clarified the issue: the statute's applications, in fact, are narrower than those of the Due Process Clause. *See Caesars* 336 S.W.3d at 57. As Plaintiffs have not addressed the issue further, and the Court has already determined that Due Process Clause's broader reach does not encompass Defendant, it is apparently uncontested that Kentucky's long-arms statute does not reach Defendant.

To exercise personal jurisdiction over Defendant Beer, Plaintiffs would need to convince the Court that *both* the Due Process Clause and the Kentucky long-arm statute permit it. Plaintiff has done neither.

### C. The Court will not allow Plaintiffs to amend their complaint.

Plaintiff's rebuttal to Defendant's Motion, such as it is, amounts to a request for leave to file an amended complaint. Plaintiff correctly notes that Federal Rule of Civil Procedure 15(a)(2) allows the court to grant leave to amend when justice requires. (Doc. # 173, at 13). But the Plaintiff never explains how not granting the Defendant's motion in anticipation of some future amended complaint serves justice. Further, the Plaintiffs give no indication that they can show the Court has personal jurisdiction over Defendant Beer. Denying Defendant's motion in the vague hope that Plaintiff will someday reveal the Court's

7

jurisdictional power serves no value, save perhaps unnecessary delay.

**D.    The Court need not address either party's other arguments.**

Finally, the parties devote much of their briefing to issues not addressed already, primarily whether the November 7, 2012 settlement order (Doc. # 134) is so prejudicial to the Defendant that it need be set aside. It may be the case that the prior settlement was prejudicial to the Defendant's legal rights. But as the Court decides that it has no personal jurisdiction over Defendant Beer, it need not address a prior settlement's impact on the Defendant.

**III.    CONCLUSION**

The Plaintiffs have had ample opportunity to show that the Court may exercise personal jurisdiction over Defendant Beer, and they have failed to do so. Accordingly,

**IT IS ORDERED** that:

(1)    Defendant Beer's Motion to Dismiss (Doc. # 155) is hereby **granted**.

(2)    The claims against Defendant Andrew Beer are hereby **dismissed without prejudice**.

(3)    A Judgment affirming this matter will be entered contemporaneously herewith.

This 20th day of December, 2013.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\Cov05\5-59 MOO Beer motion to dismiss.wpd