**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 05-59-DLB-JGW**

**WAYNE CARLISLE, et al.**                                                                    **PLAINTIFFS**

**vs.**                          **MEMORANDUM OPINION & ORDER**

**ANDREW BEER & SAMYAK C. VEERA**                                **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This matter comes before the Court on Defendant Samyak C. Veera's First Motion to Dismiss. (Doc. # 172). Because Plaintiffs failed to timely serve process or show that good cause justified that failure, Defendant Veera's Motion will be granted, and this action **dismissed without prejudice**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case has already gone to the Supreme Court and back. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). The dispute stems from the June, 1999 sale of a valuable construction equipment company. (Doc. # 1, at 8). After that sale, the Plaintiffs asked their accountants, Arthur Anderson LLP, to investigate methods of reducing tax liability. (*Id.*). As part of that process, Arthur Anderson introduced the Plaintiffs to Bricolage Capital, (*Id.*), a now-defunct financial services firm. The Defendant, Samyak C. Veera, was a principal at Bricolage. (*Id.* at 6).

The Plaintiffs eventually participated in a tax scheme that allowed Plaintiffs to acquire an interest in various partnerships while paying very little (or nothing). (*Id.* at 8-9).

1

When those partnership interests were disposed of, Plaintiffs could write off their interests as large tax losses, despite the insignificant cost of acquiring the interest in the first place. *Id.* As the Supreme Court noted, the tax shelter was simply "too good to be true." *Carlisle*, 556 U.S. at 626. The IRS ruled that the scheme was an illegal tax shelter, setting in motion a series of events that eventually led to the 2005 diversity suit, in which the Plaintiffs sought recovery against their former legal and financial advisers. (*Id.* at 626-27).

Plaintiffs then sued their former tax and legal advisors, alleging that they were the victims of Defendants' conspiracy to defraud them. (Doc. # 1, at 20). Plaintiffs acknowledge they never properly served Defendant Veera. They did request waiver of service on March 28, 2005, and July 28, 2005, but apparently never received a reply. (Doc. # 178, at 1 n.1) In December 2005 and February 2006–approximately nine and eleven months, respectively, after the litigation commenced–Plaintiffs unsuccessfully attempted to serve summonses on Veera. (*Id.* at 1). Those were the last attempts to effect service against Defendant Veera.

In the meantime, the litigation against the other Defendants continued. Eventually, the dispute reached the Supreme Court, which determined how the Federal Arbitration Act affected the rights of the parties. *See generally Carlisle*, 556 U.S. at 624. After the Supreme Court's decision, Plaintiffs settled with most of the defendants on November 7, 2012. (Doc. # 134). When Defendant Veera filed his Motion, he was one of only two defendants remaining in the case. The other Defendant, Andrew Beer, separately filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. # 155). That motion has been granted by separate Order.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(5) allows the Court to dismiss a complaint for insufficient service of process. Generally, the plaintiff "has the burden of establishing its validity." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006). In determining whether Plaintiff has met that burden, the Court may look to "record evidence" and "uncontroverted affidavits." *Id.* Unless Plaintiff can establish that process was validly served, then the Court must dismiss the action.

### A. Service of process was not timely, and the Plaintiff has not shown that good cause justifies that failure.

Federal Rule of Civil Procedure 4(m) requires that the plaintiff serve process within 120 days of commencing an action. Neither party disputes that timely service did not happen in this case. The matter does not end there, however. A failure to serve on time is not fatal "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause, a federal court must extend the deadline. *Id.*

Here, Plaintiffs advance three justifications for their failure to timely serve. First, they claim that Defendant Veera has actively hidden himself in a foreign country to avoid facing service of process. Second, they note that the litigation was stayed nearly eight years ago. Third, they assert that they've made many unsuccessful, good-faith efforts to serve process. None of these arguments is persuasive.

While Plaintiffs are correct that the litigation stay prevented them from serving the Defendant during the stay, the deadline for process service came and went months before the Court ordered a stay. Plaintiffs filed this lawsuit on March 25, 2005. (Doc. # 1). The deadline for service of process was thus July 25, 2005, 120 days after the complaint was

3

filed. Plaintiffs, by their own admission, first attempted to serve the Defendant in December 2005, and a second time in February of 2006. (Doc. # 178, at 1). Plaintiffs could have moved the Court to extend the deadline to serve process, but never did. That they failed to request an extension of time suggests that good cause does not exist to allow an extension now. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (holding that the "plaintiffs' counsel should have taken the simple step of requesting an extension of time from the court" if something was preventing plaintiff from serving process). Ultimately, the eight-year stay is irrelevant to the insufficient service issue.

Plaintiff's also point to their past efforts to serve process as evidencing "good faith." (Doc. # 178, at 5). This point is unclear. Plaintiffs, as noted already, twice requested a waiver from serving process, and later twice attempted to serve process by mail. But two requests for a waiver (both of which were ignored) is not a "good faith" effort, and neither is an attempted service by mail many months after the deadline had passed. Plaintiffs provide neither further evidence of their good faith, nor legal authority establishing that the conduct they describe counts as good faith. Meanwhile, Plaintiffs' assertion that their "hands were tied" during the stay completely ignores their violation of the service deadline long before the stay was ordered.

The most compelling of Plaintiffs's arguments is that the Defendant actively hid from process servers to avoid facing litigation. As Plaintiffs correctly note, there is some Sixth Circuit precedent suggesting that a defendant's efforts to evade service of process justifies an extension of the 120-day time limit. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991). Unfortunately, Plaintiffs' arguments on this issue are woefully undeveloped. Plaintiffs claim, for instance, that the Defendant "disappeared to India." Set

aside, for the moment, that whatever can be said of those residing in India, they certainly have not "disappeared." Defendants' travels are irrelevant. It's not a crime to travel outside of the United States, and the Federal Rules of Civil Procedure provide ample guidance regarding how one might serve a foreign defendant. *See* Fed. R. Civ. P. 4(f). Without further factual allegations regarding Plaintiffs' and Defendant's conduct, it is impossible for the Court to determine that Defendant actively hid from process service. How did the Defendant allegedly conceal his whereabouts? What did Plaintiffs do to procure an address or other contact information? What had Plaintiff done before the 120-day deadline passed to locate the Defendant and serve him? These are the types of questions the Court would need answered to determine whether the Defendant had purposefully evaded service. Plaintiffs have done little to shed light on these important issues, and have relied instead on an odd mixture of conclusory statements and insinuation. As it is not the responsibility of the Court to put "flesh on the bones"[1] of Plaintiffs' argument, there is little basis for the Court to find that Defendant has intentionally evaded service of process.

Because each of Plaintiffs' justifications for violating Rule 4's deadline fail, they have not met the burden of establishing that Defendant Veera was validly served process, or shown good cause for failing to do so.

### B. The Court need not address whether the manner of service was appropriate.

In his 12(b)(5) motion, Defendant further argues that service was not made on the Defendant or an authorized agent, and is consequently invalid under the Federal Rules.

---

[1] "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

(Doc. # 172-1, at 4-8). The Court need not address this issue, as service was untimely for the reasons noted above, and that ground alone is sufficient to grant Defendant's motion. Accordingly,

**IT IS ORDERED** that:

(1) Defendant Veera's Motion to Dismiss (Doc. # 172) is hereby **granted**.

(2) Plaintiffs' claims against Defendant Samyak C. Veera are hereby **dismissed without prejudice**.

(3) A Judgment affirming this matter will be entered contemporaneously herewith.

This 20th day of December, 2013.

Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\ORDERS\Cov05\5-59 MOO Veera motion to dismiss.wpd